DR. L. W. BOOKER, RESPONDENT, v. KANSAS CITY GAS COMPANY, APPELLANT.—96 S. W. (2d) 919.

Kansas City Court of Appeals.    October 15, 1936.

*Preble Hall, Horace Guffin, Cleary M. Detling* and *Harold E. Marshall* for respondent.

*Charles H. Mayer* and *Charles M. Miller* for appellant.

SPERRY, C.—On March 15, 1932, plaintiff filed his first amended petition against Fremont Land and Improvement Company and appellant herein as codefendants. The allegations in the first count were that he was injured by reason of an explosion of natural gas at premises occupied by him and that said explosion was the result of negligence of Fremont Land and Improvement Company, owner

of the property, and of appellant, owner of the gas pipes leading into the house; and therein he prayed for damages in the sum of $5000 on account of said personal injuries. In the second count he prayed for damages to personal property, growing out of said explosion, in the sum of $3215.60.

In due time appellant filed separate answer in the nature of a general denial and set up the specific defense that respondent had been paid the sum of $1000 by the Fremont Land and Improvement Company; that said Fremont Land and Improvement Company had been released on account of all matters mentioned in the first amended petition of respondent; and that respondent had thus been fully compensated on account of all matters mentioned in said first amended petition.

Thereafter respondent dismissed the suit against Fremont Land and Improvement Company, and to appellant's answer filed a reply in the nature of a general denial. Thereafter, in the September term of court, 1934, trial was had to a jury and verdict in the following form duly returned:

"We, the jury, find the issues in favor of the plaintiff on both counts of the petition and against the defendant and we assess his damages upon the first count at the sum of $300.00 and we further assess his damages on the second count at the sum of $200.00. Being a total of $500.00 in addition to the $1000.00 paid by the Fremont Land and Improvement Company."

Judgment was duly entered thereon and appellant in proper time prosecuted this appeal.

It would be burdensome and unnecessary to set out the facts in full herein since only two points are raised on this appeal. The first is that error was committed in not permitting appellant to read to the jury parts of the testimony of one Anna Walker, a witness on behalf of respondent, from a transcript of her evidence given at a previous trial wherein her husband was plaintiff and appellant herein was defendant, in a suit for damages growing out of the same gas explosion which was the cause of the injuries alleged in this case, for the purpose of impeaching her in this trial. Anna Walker testified in the instant case that she was office girl and maid in respondent's home and lived there at the time of the explosion; that she smelled gas in the quarters of respondent on more than one occasion prior to the explosion; that she reported the detection of the odor of gas to a Mr. Altman, the tenant from whom respondent subleased his premises; that she first smelled gas there two or three years before the explosion, and the odor was prevalent practically all the time for two years prior thereto; that she complained to Altman and respondent many times regarding same; that on the day before the explosion

216

the odor was more noticeable than ever before; that she called respondent and told him, also called Altman who suggested that she report the matter to the gas company, appellant herein. She further testified on direct examination as follows:

"Q. (Mr. Detling) State whether or not you called the Gas Company by telephone. A. Yes, I called them by telephone.

"Q. State how you obtained the telephone number of the Gas Company to call them? A. I asked Information for the number. . . .

"A. I called the Gas Company and I got Information to give me the number. Then I called them." . . .

On cross-examination, she testified as follows:

"Q. (Mr. Miller) Now you say in calling the Gas Company up you called for Information, what number did you dial to get Information on the telephone? A. Four one one.

"Q. Four one one? A. Four one one.

"Q. Four Hundred and eleven. You dialed to get Information from the telephone office? A. The numerals are four one one.

"Q. That is four hundred and eleven. A. No, it is not that—I guess it is four hundred and eleven—I guess that is what you would call it, but that isn't the way you dial it on the telephone.

"Q. Yes. Well, is the number four hundred eleven that you dialed to get Information? A. Four one one would be four thousand eleven. This was four hundred eleven.

"Q. Four one one wouldn't be four thousand eleven. A. I know that is four one one.

"Q. That is the number you dialed to get Information at the telephone office, four one one? A. Four one one.

"Q. Any exchange on it? A. No.

"Q. You just picked up the telephone and dialed four one one and that gave you Information at the telephone office, did it? A. Yes, it did."

Appellant further cross-examined as follows:

"Q. Now, as a matter of fact, you heretofore testified that you looked the Gas Company's number up in the telephone book? A. I don't remember that.

"Q. What? A. I don't remember saying anything like that.

"Q. I will ask you if on the trial of your husband's case, page 31 of the transcript, if I didn't ask you this—if Mr. Delting didn't ask you this question: 'Q. How did you call them? A. I called them by telephone. Q. Telephone? A. Yes. Q. How did you get the telephone number? A. I looked in the book and got it.' Did you testify that way in your husband's case? A. I don't remember whether I testified that way or not.

"Q. If you did that wasn't the fact, was it? A. Well, I got Information and got the number."

Throughout several pages of cross-examination of this witness, appellant asked her if certain questions were asked her and certain answers made by her, reading said questions and answers from what purported to be a transcript of her evidence given at the trial of her husband's case. It is claimed, and with merit, that there was a material variance in her evidence as given at this trial and in her evidence as given in the trial of her husband's case and that the transcript of the latter would have so shown. To many of such questions she answered that she did not remember the question and answer as read; to others she answered that she did not make such answers; some she remembered and admitted. Some of the evidence in question had to do with the notice alleged to have been given appellant, and therefore material as bearing upon appellant's knowledge of the conditions and its negligence in failing to remedy defects.

Thereafter the transcript was duly identified and offered in evidence and appellant then offered to read certain portions thereof, which were claimed to be contradictory of the witness' testimony given in the instant case, and upon which appellant had theretofore cross-examined her from the transcript. Objection was made as follows:

"Mr. Detling (interrupting): We object to him reading the testimony of Mrs. Walker. She was here and he was given an opportunity to cross-examine her.

"The Court: Sustained."

Counsel then read into the record, outside the hearing of the jury, certain questions and answers from the transcript which he offered to read to the jury and which tended to contradict the witness' testimony given at the trial on material matters. The court refused to permit the reading of it to the jury on the grounds that counsel had read from the transcript in cross-examining the witness, without objection, and that to permit the reading at this time would be repetition. Exceptions were duly saved.

The correct rule for cross-examining a witness upon an alleged variance between his testimony given at the trial and that given in a deposition taken prior thereto is for the cross-examiner to have the witness identify the deposition and his signature thereto and ask him if, when his deposition was taken, the following question was asked him, reading the question from the deposition, and if the witness did not make the following answer, reading the answer shown to have been made. [Peppers v. St. Louis-San Francisco Ry Co., 295 S. W., l. c. 762; Wilson v. Marland, 7 S. W. (2d) 442, l. c. 445, Kansas City Court of Appeals case.]

If the witness admits that said question was asked and said answer was given, that would probably end the matter; for in that event the variance would have been shown. In any event, the deposition would have been proved by the admitted signature of the witness.

But in this case witness was being cross-examined as to testimony alleged to have been given at a different trial, not as to a deposition. No deposition had been offered to her for examination or identification. She was being cross-examined from what the cross-examiner stated was a transcript of her evidence given in said former trial. But the cross-examiner did not know that it was a transcript nor had he or anyone else, at that time, been sworn to identify it as such; nor had same been offered in evidence; nor was it admissible in evidence, unless variance was shown as between the evidence therein contained and that given by the witness at the trial. True, respondent did not object to the statement of counsel that he was cross-examining from such a transcript nor did he object to the method of cross-examination. Such an objection, if made, would not have been good. The procedure thus far was correct. He was merely asking her if she, at a certain time and place, and to certain persons, made specific statements in answer to specific questions. He was laying the foundation for impeachment. If she had answered that she did make the statements charged, the matter would probably have been closed and the jury would have been permitted to draw its own conclusion therefrom. The impeachment, if shown, would have been perfected and the inconsistency proved.

But she did not admit all of the answers imputed to her, and she denied that certain of the questions were ever asked or that she made the answers alleged. In such case the declaration of the Supreme Court in Peppers v. Frisco Ry., 295 S. W. 757-762, states the correct procedure:

"If the witness has not signed the deposition he may be impeached as for any other parol statement, preferably, however, by having the reporter taking the deposition read his original shorthand notes."

The reading of the shorthand notes would be preferred because it would be most effective; but the reading of the stenographic transcript of said notes would undoubtedly be permissible, after the reporter had proved the verity of the transcript.

In this case the jury may not have believed the cross-examiner was reading from the transcript correctly; nor that he even held in his hand a correct transcript. They would not know that the transcript later identified and offered in evidence was the same identical instrument from which the cross-examiner read. The court's refusal to permit appellant to read the portions of the transcript offered left appellant in the same position as if he had asked the witness if she

made a certain oral statement in the presence of a named party on a specified occasion, a practice frequently followed in attempts to impeach witnesses, and when she denied it appellant, not being permitted to call said person to whom the contradictory statement was alleged to have been made, to prove that it was made. In such a case the jury might reasonably conclude that the witness did not in fact make any such admission contradictory of the evidence given at the trial. Thus appellant would be in worse position than if he had never sought to impeach her. The court's action in this regard was erroneous and prejudicial to appellant. The reading of the offered portions of the transcript was not repetition but was a necessary step to conclude the attempted impeachment. The record discloses the same procedure, offer and ruling of the court as to other evidence of this and other witnesses. The ruling here would probably be applicable in all such cases, although the alleged error as to this witness is all that appellant has briefed and argued here and hence all that is considered in his opinion.

Appellant next contends that the verdict of the jury was erroneous because under the state of the pleadings and of the instructions and evidence it was impossible for the jury to determine how much damages, over and above what respondent had already received from Fremont Land and Improvement Company, respondent had suffered on each of the two counts of the petition; that the jury could not intelligently arrive at a fair figure of damages due from this appellant on account of personal injuries because there was no way to determine what portion of the $1000 theretofore received was for and on account of said personal injuries, and what portion was received on account of damages to personal property sued for in the second count. It is also urged that the evidence showed a full settlement of the cause of action, both as to the first and second counts, for the sum of $1000.

It is the law that a claimant may settle with one of two or more joint tort-feasors and release that particular joint tort-feasor from further liability, and still hold and sue the others for the balance of his damages. He can have but one satisfaction; but he can accept a part of that satisfaction from one and release him in full, continuing to hold the others for the balance. [Section 3268, R. S. Mo. 1929; Knoles v. Southwestern Bell Tel. Co., 265 S. W. l. c. 1007; Clifton v. Caraker, 50 S. W. (2d), l. c. 761.] But if the release is in full of all damages, as distinguished from a release of one codefendant or joint tort-feasor, then the cause of action is dead and cannot be revived. [Abbott v. City of Senath, 243 S. W., l. c. 642.]

Here appellant pleaded full settlement of the cause of action by the payment of $1000 to respondent by appellant's codefendant. The

case was dismissed as to said codefendant and then respondent filed a general denial to said specific defense. No receipt was introduced in the case, no oral evidence was offered regarding the nature of the settlement made with the joint tort-feasor. Having pleaded the specific defense, that full settlement had been made of the whole cause of action, and it having been denied, we think it was incumbent upon appellant to prove this specific defense thus pleaded. It was an issue, just as any other issue so pleaded. Pleading is not proving; and a release of one is not a release of others as a matter of law. [Clifton v. Caraker, 50 S. W. (2d), l. c. 761.]

It is true that counsel for respondent admitted in open court that a settlement had been affected as between respondent and Fremont Land and Improvement Company. But this was no admission that the cause of action had been settled. Such a theory would be contrary to the theory of respondent's case as pleaded and submitted on in-instructions. Such an essential fact cannot be assumed. In all cases cited by appellant on this point, the receipt and terms of settlement are positively shown in evidence; and Abbott v. City of Senath, supra, holds that the receipt in evidence was one calling for judicial interpretation and was not for the consideration of the jury. In this case there was nothing for either the court or the jury to pass on, so far as the defense in question is concerned. To hold with appellant on this point would be to hold that a release of one is a release of all, as a matter of law, without any proof that it was the intention of the parties so to do. We will not indulge in such presumption in the state of the pleadings and evidence found in this case.

Appellant contends the verdict was for $500 in full of damages suffered by respondent and since he had already received $1000, it was really a judgment for defendant. But the issue of the settlement of Fremont Land and Improvement Company was mentioned in instructions and the verdict was clearly responsive to the instruction on this point.

Lastly, it is said that the jury could not properly find a judgment of $300 on the first count, because in order to do so the jury must have some way of determining how much more, if any, this codefendant should pay, so as to fully compensate for the total damage. The record is silent as to what portion of the $1000 paid by Fremont Land and Improvement Company was in settlement of the claim for personal injuries and what portion was for property damage. The pleadings do not allege, nor does the evidence tend to prove, anything on this point. Therefore the jury could only speculate. A verdict for damages in this case, as to either count, cannot be permitted to stand on speculation and guesswork. It is erroneous. The judgment is reversed and the cause is remanded. *Campbell, C.,* concurs.

PER CURIAM:—The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. Judgment is reversed and the cause is remanded. All concur.