NEW AMSTERDAM CASUALTY COMPANY, a Corporation, Plaintiff,

v.

Jerome Dudley O'BRIEN, Appellant,

and

C. Gordon Heiss, Heiss Hotel Company and Mayfair Hotel Company, Respondents.

No. 47534.

Supreme Court of Missouri,

Division No. 1.

Jan. 11, 1960.

Bernard Susman, William L. Mason, Jr., St. Louis, for appellant.

Grand, Peper, Martin & Roudebush, Harold C. Gaebe, Jr., St. Louis, for respondents.

HOLLINGSWORTH, Judge.

This is an appeal by Jerome Dudley O'Brien, defendant and third-party plaintiff, hereinafter referred to as appellant, from a judgment rendered in favor of C. Gordon Heiss, Heiss Hotel Company and Mayfair

Hotel Company, third-party defendants, hereinafter referred to as respondents, in which action appellant sought to recover $2,500 actual and $25,000 punitive damages for allegedly false and fraudulent representations made by respondents in procuring from appellant a transfer of "whatever interest, if any," appellant had in 149 shares of common stock and 299 shares of preferred stock of Heiss Hotel Company. Respondents denied the fraud alleged and affirmatively pleaded (1) a duly executed release in full of the claim asserted by appellant and (2) the five year statute of limitations, Section 516.120 RSMo 1949, V. A.M.S. Pursuant to stipulation, approved by the trial court, the defenses of release and bar of the action by limitation were separately tried upon certain of the pleadings, with the understanding that the judgment rendered thereon would be final and appealable as to those issues.

The background of this litigation, as revealed in pleadings filed in connection therewith and considered by the court in disposing of the issues here presented, will be of aid in disposing of the contentions made by appellant at the trial and on this appeal. In 1950, respondents were interested in procuring the aforesaid certificates of stock, which were registered in the name of John F. Bulfin. Bulfin had died in 1933, leaving his estate to his widow, who had died in 1944, leaving appellant as one of her heirs. The stocks were not listed as assets in either estate and appellant was unaware of any interest therein. Respondents, for a consideration of $509.78 paid to appellant, procured from him "whatever interest, if any, he had" in said stock. In connection with the sale and transfer of that interest, appellant executed an application for and New Amsterdam Casualty Company delivered to respondents a "fiduciary or lost instrument bond," insuring respondents against loss by reason of their payment of $509.78 for said stock if appellant did not own it. Either the application or the bond or both contained "an

indemnity agreement in favor of said New Amsterdam Casualty Company."

On or about May 24, 1951, the stock certificates, duly endorsed by John Bulfin, were found among the assets of the estate of one Lawton, deceased, and they were purchased from that estate by respondents. Thereafter, on demand of respondents, New Amsterdam Casualty Company (hereinafter referred to as "Amsterdam") paid respondents the sum of $509.78, and Amsterdam, on or about June 21, 1954, instituted suit against appellant under his indemnity agreement. Appellant impleaded respondents as third-party defendants and on May 2, 1956, filed "Answer of Defendant Jerome Dudley O'Brien to Plaintiff's Fourth Amended Petition and Defendant's Counterclaim and Third Party Petition."

In that portion of the pleading designated "Defendant's Counterclaim and Third Party Petition," appellant alleged that respondents, for the purpose of inducing him to sell his interest in said stock, represented to him that, as an integral part of the transaction, respondents would obtain a policy of insurance and indemnity to protect appellant against any loss or repayment of the amount paid him by reason of the stock being found. The pleading further alleged the intentional falsity of those representations, appellant's reliance thereon, and the fraudulent procurement of insurance by respondents *in behalf of respondents* instead of *in behalf of appellant*. The counterclaim further alleged "that plaintiff (Amsterdam) and third party defendants (respondents) acted jointly and in consort with each other." The prayer sought *judgment against plaintiff* (Amsterdam) *and third-party defendants* (respondents) *for $2,500 actual and $25,000 punitive damages "for the aforesaid false and fraudulent representations."* That pleading will hereinafter be referred to as "appellant's counterclaim."

In that state of the pleadings, appellant, on April 23, 1957, executed, acknowledged before a notary public and delivered to Amsterdam the following document:

"Release
"In Full Of All Claims

"In consideration of the payment of One and no/100 Dollar and other good and valuable consideration, to me in hand paid by The New Amsterdam Casualty Company, a corporation, I do hereby release and forever discharge said New Amsterdam Casualty Company, its agents, servants, employees, attorneys, successors and assigns, from any and all actions, causes of actions, claims and demands for, upon or by reason of any damage, loss or injury, which heretofore have been or which hereafter may be sustained by me in consequence of my application to said company for the issuance of a lost instrument bond, and the issuance of said bond, and the matters involved in civil action styled New Amsterdam Casualty Company v. Jerome Dudley O'Brien, et al., in the Circuit Court of the County of St. Louis, Missouri, cause No. 204611, and all issues relating thereto;

\* \* \* \* \* \*

This Is A
Release
In Full

"Jerome Dudley O'Brien [Seal]
"Jerome Dudley O'Brien \* \* \*"

Following the execution of the above release, appellant on June 17, 1957, filed his "First Amended Third Party Petition." Thereafter, on June 6, 1958, he filed his last pleading designated as "Third Amended Petition of Defendant and Third-Party Plaintiff Jerome Dudley O'Brien." The allegations of these two pleadings are practically identical. In both of them, Amsterdam is deleted as a party. In both of them, however, appellant re-alleges the fraud originally pleaded against both Amsterdam and respondents but makes no mention of their acting "jointly and in consort with each other." Both of these pleadings, in addition to the fraud priorly alleged against both Amsterdam and respondents as joint tort-feasors in appellant's counterclaim, further allege for the first time as follows:

"On or about June 21. 1954, plaintiff New Amsterdam Casualty Company sued third party plaintiff Jerome O'Brien to indemnity it for its payment, (together with its attorney fees and expenses) to defendant Mayfair Hotel Company. Said suit was successfully defended by plaintiff Jerome O'Brien in this court and in such defense plaintiff Jerome O'Brien incurred a liability for attorney fees in the amount of $1,000.00. That in addition thereto, plaintiff Jerome O'Brien has lost time from his business, and has suffered embarrassment, and his business and business credit have been injured in the amount of $1500.00."

The prayer in both of these pleadings was, as it was in the original counterclaim against Amsterdam and respondents, *for actual damages in the sum of $2,500 and punitive damages in the sum of $25,000 and for costs.*

Appellant's contentions with reference to the release are:

(1) There is no evidence that respondents were joint tort-feasors with Amsterdam in the cause of action asserted by him against respondents "because the averment that New Amsterdam and 'defendants acted jointly and in consort with each other,' found in an *abandoned pleading* of [appellant] has no probative force nor value and there is no other evidence on the point; \* \* \*." (Emphasis ours.)

(2) The release did not operate to release respondents "because release of one tort-feasor does not release others unless the party giving the release has received satisfaction; the written release in evidence does not recite that [appellant] received satisfaction and there is no evidence that he did."

(3) "The release cannot be construed to be a direct release of all parties adverse to [appellant], regardless of whether such parties were or were not joint tort-feasors, on the theory that the release states that

[appellant] releases the party named in and specifically released from 'any and all actions, claims and demands,' etc., because: a release is a contract, and subject to the same general principles of law; a contract must be supported by a consideration; there was no consideration for a release of these [respondents] by the release in question, and [respondents] were not parties to the contract of release; it does not in any way recite or evidence that it was made for their benefit; and there is no evidence that it was."

Of these, in order:

(1) The pleading which appellant now designates as "an abandoned pleading" was very much alive at the time the release in question was executed on April 23, 1957, and it was not "abandoned" until appellant filed his "First Amended Third Party Petition" on June 17, 1957, at which time he dropped Amsterdam as a party. Prior to that time his counterclaim sought not only actual damages in the sum of $2,500 *but also punitive damages in the sum of $25,000* against both Amsterdam and respondents, predicated upon an express allegation that Amsterdam and respondents "acted jointly and in consort with each other" in "tricking" him into procuring the insurance in favor of respondents instead of in favor of himself.

We think it clear beyond question that the theory upon which appellant sought, and the only theory upon which he could possibly have sought, to recover *punitive damages* against Amsterdam was that Amsterdam had acted jointly with respondents in the alleged fraud allegedly perpetrated upon appellant. Moreover, it is also clear that Amsterdam construed the counterclaim to allege it to be a joint tort-feasor with respondents; otherwise, there would have been no reason for it to pay to appellant "good and valuable consideration" for the release. This for the reason that it appears from appellant's last two pleadings that prior to or about the time the release was taken appellant had "successfully defended" the action brought by Amsterdam to recover the $509.78 paid by it to respondents. Consequently, Amsterdam could not have been subjected to any liability to appellant except that jointly alleged against it and respondents in appellant's then pending counterclaim as joint tort-feasors. The conclusion is inescapable that appellant executed the release and Amsterdam paid the consideration therein named as a final disposition of any liability to which it might be subjected as a joint tort-feasor with respondents in the fraud allegedly perpetrated upon him.

Neither may appellant escape whatever legal effect the release may have upon his action now pending against respondents by now asserting that Amsterdam was not a joint tort-feasor with respondents or that there was no evidence that it was. Having received valuable consideration from Amsterdam for a release from liability as an alleged tort-feasor, he will not be permitted to seek further beneficial result to himself by asserting that "I pursued the defendant falso clamore, and I took the money by way of a settlement of a pending action in which I never could have recovered." Hubbard v. St. Louis & Meramec River R. Co., 173 Mo. 249, 72 S.W. 1073, 1074.

(2) In contending that the release above set forth did not operate to release respondents as joint tort-feasors with Amsterdam, appellant relies upon section 537.060 RSMo 1949, V.A.M.S., the pertinent portion of which, enacted in 1915 as an amendment to the then existing statute providing for contribution between tort-feasors as in actions founded on contract, reads:

"It shall be lawful for all persons having a claim or cause of action against two or more joint tort-feasors or wrongdoers to compound, settle with, and discharge any and every one or more of said joint tort-feasors or wrongdoers for such sum as such person or persons may see fit, and to release him or them from all further liability to such person or persons for such tort or wrong, without impairing the right

of such person or persons *to demand and collect the balance of said claim* or cause of action from the other joint tort-feasors or wrongdoers against whom such person or persons has such claim or cause of action, and not so released." (Emphasis supplied.)

Appellant insists that, inasmuch as the release above set forth does not contain the *word* "satisfaction", it is not to be construed as a release of respondents even though it be conceded they and appellant were joint tort-feasors. Cited in support of that contention is Western Newspaper Union v. Woodward, D.C., 133 F.Supp. 17, 23, wherein it is stated: "Under the law of Missouri, the release of one of several joint tortfeasors does not discharge other joint tortfeasors unless the release acknowledges 'full satisfaction', * * *." That case also cites and appellant directs attention to the cases of Berry v. Kansas City Public Service Co., 343 Mo. 474, 121 S.W.2d 825; Farrell v. Kingshighway Bridge Co., Mo. App., 117 S.W.2d 693; Roberts v. Atlas Life Ins. Co., 236 Mo.App. 1162, 163 S.W. 2d 369; Kahn v. Brunswick-Balke-Collender Co., Mo.App., 156 S.W.2d 40.

A careful reading of Newspaper Union, supra, reveals that the above quoted statement made therein was not decisive of the issue under consideration and that it was made arguendo only during the course of the opinion. Moreover, the cases cited therein do not hold that a release does not operate as *full satisfaction* of a claim or demand for unliquidated damages unless it expressly states that it is given in "full satisfaction of such claim or demand." In Berry, supra, 121 S.W.2d 825, 833, the plaintiff made a *partial* settlement with one of the alleged joint tort-feasors, and this court merely held that "[w]hen an injured plaintiff compromises or settles with one of the joint tort-feasors for a *portion* of the injuries, the injured person still retains her cause of action against the other tort-feasors and recovery may be had for the balance of the injury." In Farrell, supra, 117 S.W.2d 693, 697, it was said that the written agreement there under considera-

tion contained no recital that the amount paid was in full satisfaction of a *judgment* and that *under the circumstances shown* it could not be construed as being a satisfaction or settlement which could operate to extinguish plaintiff's cause of action. In Roberts, supra, 163 S.W.2d 369, 371, it was admitted that prior to the filing of the action against defendant Atlas, that "plaintiffs, by way of settlement with [one of the alleged joint tort-feasors] had received $2,-000 and signed a release, *reserving however right to sue defendant herein.*" (Emphasis supplied.) In Kahn, supra, 156 S.W.2d 40, 42, the court, in speaking of section 537.060, said: "The principle of law has never been altered that a plaintiff's right to recover and have satisfaction for his injuries, whether caused by one or many wrongdoers, is single, *and if he receives satisfaction for the injuries once, whether in court or out of court, from one wrongdoer, he cannot recover any further amount from another wrongdoer.* Neal v. Curtis & Co. Mfg. Co., 328 Mo. 389, 41 S.W.2d 543, 556; Abbott v. City of Senath, Mo.Sup., 243 S. W. 641." (Emphasis ours.) The writer of the Kahn opinion then went on to hold that the evidence showed plaintiff had made a settlement of her claim in full with one of the joint tort-feasors and was not entitled to proceed further against the other. Clearly, none of these cases supports appellant's contention.

In practically all of the cases written since the amendatory act of 1915, section 537.060, it has been consistently held, as is well stated in Booker v. Kansas City Gas Co., 231 Mo.App. 214, 96 S.W.2d 919, 923: "It is the law that a claimant may settle with one of two or more joint tort-feasors and release that particular joint tort-feasor from further liability, and still hold and sue the others for the *balance of his damages.* He can have but one satisfaction; but he can accept a part of that satisfaction from one and release him in full, continuing to hold the others for the balance. Section 3268, R.S.Mo.1929 (Mo.St.Ann. § 3268, p. 3389); * * * But if the re-

lease is in full of all damages, as distinguished from a release of one codefendant or joint tort-feasor, then the cause of action is dead and cannot be revived. Abbott v. City of Senath [Mo.Sup.], 243 S.W. 641, loc. cit. 642." (Emphasis ours.) See also McEwen v. Kansas City Public Service Co., 225 Mo.App. 194, 19 S.W.2d 557, 559; Neal v. Curtis & Co. Mfg. Co., 328 Mo. 389, 41 S.W.2d 543, 556; State ex rel. Caraker v. Becker, 333 Mo. 400, 62 S.W.2d 899. And it is worthy of note that most of them cite and rely upon Abbott v. City of Senath, Mo.Sup., 243 S.W. 641, written in 1922, in which the effect of Section 4223, R.S.1919, now Section 537.060, was construed, loc. cit. 642, to wit: "This statute was evidently intended to abrogate the rule at common law that a release of one joint tort-feasor operates as a discharge of the other joint tort-feasor. But it was not designed to affect, and does not affect, the principle that there can be but one satisfaction for the same wrong."

■ The law is clear. The difficulty arises in applying it to the infinitely varying terminology of and circumstances under which the release in question is given. The current practice of using "covenants not to sue" tends to obviate the difficulty with which we are confronted in the instant case. But, even if a "covenant not to sue" one joint tort-feasor shows that it was in fact given in satisfaction of plaintiff's whole claim, it nevertheless bars further action against another joint tort-feasor. See Clark v. Union Electric Light & Power Co., 279 Mo. 69, 213 S.W. 851.

■ When the release here in question was given to Amsterdam, appellant, in his pending counterclaim, was seeking to recover actual and punitive damages against both Amsterdam and respondents. The release bore a heading reciting *"Release in Full of All Claims."* Alongside appellant's signature there appears in bold capital letters the statement "This is a Release *in*

*Full."* By its express terms, it specifically releases and discharges Amsterdam "from *any* and *all actions, causes of actions, claims and demands* * * * by reason of *any damage, loss or injury* which *heretofore have been or which hereafter may be sustained by me in consequence of"*—what? "[M]y application to said company for the issuance of a lost instrument bond, and the issuance of said bond, *and the matters involved in civil action styled New Amsterdam Casualty Company v. Jerome Dudley O'Brien, et al., in the Circuit Court of the County of St. Louis, Missouri, cause No. 204611, and all issues relating thereto;* * * *."* (Emphasis ours.) There is no ambiguity in that language. It is a release *in full* of *all* claims, present and future, and, specifically, it includes the alleged injury and damage for which appellant now seeks to recover from respondents the same amount of actual and punitive damages he sought to recover from them and Amsterdam in his counterclaim pending when the release was taken. The consideration paid by Amsterdam was $1 "and other good and valuable consideration." It was, therefore, on its face, more than nominal. Appellant, who knew the amount and extent of that "good and valuable consideration" and the circumstances under which the release was given, elected to go to trial and to submit his case against respondents without revealing either. He is now in no position to urge upon this court any factor for consideration in determining the effect of the release other than the instrument itself; and, commendably, he does not. No fraud in procurement of the release, misunderstanding of its import, nor ambiguity of its meaning is advanced.

The facts in Abbott v. City of Senath, supra, 243 S.W. 641, are analogous to the facts here under consideration. In that case, Abbott, while walking along a street in Senath, was injured by the falling of an awning extending over the street from a building owned by Senter Commission Company. Following his injury, he re-

ceived from Senter the sum of $500, and took its receipt, reading as follows:

"$500.00 Senath, Missouri, March 11, 1918.

"Received of Senter Commission Company, St. Louis, Mo., five hundred dollars in full of all demands, from injury received by the falling of awning in front of their brick building, occupied by Petty Store Company, located in Senath, Missouri, on or about the 16th day of January, 1918.

C. H. Abbott."

His suit against the city ensued. The city pleaded the release. This court said the question for determination was: "Did Abbott accept from Senter Commission Company $500 as full satisfaction for his injury?" In disposing of that question, this court said:

"The facts and circumstances leading up to and attending the consummation of the transaction between Abbott and the Senter Commission Company were not disclosed by the evidence. The execution of the receipt was proved, and it was then read in evidence. Nothing further was shown with respect to it. In interpreting it, therefore, no resort can be had to extrinsic facts. The document recites that—

"Abbott received the money 'in full of all demands from [for] injury by the falling of awning in front of their [the company's] brick building * * * on or about the 16th day of January, 1918.'

"This language excludes the idea that the money was paid as a gift or gratuity. Nor does it contain any suggestion that the money was accepted by Abbott merely as part compensation for his injury, in consideration of which he released the company from further liability. On the contrary, it plainly states that the money was received by him *in full payment of all demands for his injury*. Appellant insists that it should be read 'in full of all demands *against the Senter Commission Company*.' But even

so, the company was liable, if at all, for the entire damage, and there is nothing in the language to indicate, even by implication, that Abbott was claiming or demanding anything less than the full amount for which it was liable to him. But aside from any such refinement, the recital in general terms that the money was received in full of all demands for his injury, without any limitations or reservations whatever, clearly indicates that Abbott considered that he had effected a complete settlement, and that he was thereby acknowledging, and intending to acknowledge, satisfaction in full of his cause of action." (Emphasis that of the writer of that opinion.)

The question posed in that case is identical to the question posed here. The circumstances and the state of the evidence are likewise identical. The language of the Abbott release is strikingly similar to the language of the release given by appellant; the only essential difference being that the release given by appellant is more comprehensive. We are convinced that the provisions of the release in the instant case, considered in the light of the pleadings above reviewed, must be construed and taken as a release in full of the claim herein asserted against respondents.

■ (3) Appellant further asserts that there was no consideration moving from respondents to appellant for the release given and that it is not, therefore, binding upon him. The contention is without merit. The question is: Did appellant receive full satisfaction of his claim from Amsterdam? It matters not which of the alleged wrongdoers paid it. Neal v. Curtis & Co. Mfg. Co., 328 Mo. 389, 41 S.W.2d 543, 556 [26–27]; Abbott v. City of Senath, supra.

The conclusions above reached make it unnecessary to consider other points raised by appellant.

The judgment is affirmed.

All concur.