Frank R. HAILS and Frances P. Hails,

v.

SYSTEMS CONSTRUCTORS, INC.

No. 24505.

Kansas City Court of Appeals.

Missouri.

Oct. 3, 1966.

W. K. Gibson and Martin, Gibson & Gardner, Sedalia, for appellant.

George H. Mitchell, Pine, Welling, Jones & Mitchell, Warrensburg, for respondents.

MAUGHMER, Commissioner.

This is a suit to recover damages for loss to crops and livestock belonging to plaintiffs Frank R. and Frances P. Hails. The alleged losses occurred during the period that a missile cable line was being constructed across plaintiffs' farm by defendant Systems Constructors, Inc., a corporation. Plaintiffs had granted authority to construct the missile cable line to the United States of America and defendant performed the actual construction under such authority. The verdict and judgment were for plaintiffs in the sum of $2,754. Defendant has appealed and presents two assignments of error. It says (1) its motion for a directed verdict should have been sustained, and (2) "the evidence is insufficient to prove a claim against this defendant".

Plaintiffs insist first, that the appeal itself was not timely taken and should be dismissed. We recite the record facts relative to this point:

1. The verdict of the jury was returned on September 1, 1965.

2. Under date of September 1, 1965, the following entry appears on the judge's docket: "Judgment for plaintiffs for $2754.00 on verdict".

3. There is no judgment entry in the circuit court record book prior to February 21, 1966—almost six months after verdict.

4. On September 15, 1965, defendant filed its "Motion to set aside verdict and judgment and to enter judgment for defendant". On October 18, 1965, this motion was argued and taken under advisement by the court.

5. On December 2, 1965, defendant filed notice of appeal.

6. On February 18, 1966, the parties filed their "joint motion for entry of judgment nunc pro tunc in accordance with verdict".

7. On February 21, 1966, the court sustained the joint motion and entered judgment nunc pro tunc in accordance with the verdict and as of September 1, 1965 (date of verdict).

▇ Of course, a judgment in accordance with the verdict should have been entered at the time the verdict was returned. We believe, however, that the trial court was authorized to make such judgment entry nunc pro tunc as it did. The verdict of the jury and the recitation "Judgment for plaintiffs for $2754.00 on verdict", which was entered on the judge's docket on September 1, 1965, are each written notations or memorandum upon which a nunc pro tunc entry can properly be predicated. Furthermore, neither party objects to this entry of judgment and in fact both joined in moving that it be made.

▇ However, plaintiffs say defendant's appeal is untimely filed. It is plaintiffs' contention, as stated in their brief, that the final judgment in this case was not entered until February 21, 1966, (the date of the nunc pro tunc order) and that since defendant did not thereafter appeal, or ever appeal from "said judgment of February 21, 1966", there is no valid appeal. We disagree. Plaintiffs want liberal construction for entry of their judgment, but rigid construction to deny the right of appeal.

The record in the case before us as to the judgment entry, ruling on after-trial motion, and as to the appeal notice, is certainly irregular as to timeliness. No timely, formal judgment was entered on the verdict, defendant's after-trial motion does not appear to have ever been ruled except through passage of time (90 days) and defendant filed its notice of appeal before there has been any actual denial of the after-trial motion, and prior to entry of the nunc pro tunc order.

We shall dispose of this particular point involving the judgment and appeal by ruling as follows: (1) We have already approved the nunc pro tunc judgment entry. Although this order was made February 21, 1966, it directed a judgment entry as of September 1, 1965; (2) defendant's appeal notice was under date of December 2, 1965. On this date defendant's after-trial motion was still pending. It had not been overruled by the court or by expiration of 90 days after the filing of same; (3) however, as of now, the record recites entry of judgment on September 1, 1965. Defendant did file a timely after-trial or after-verdict motion. Before this motion was acted upon, defendant filed its notice of appeal. The after-trial motion was overruled as of December 14, 1965 (90 days after filing), since it was not passed upon by the court; (4) defendant's appeal notice of December 2, 1965, is valid and effective under the provisions of Civil Rule 82.05(b), V.A.M.R., which provides:

"In any case in which a notice of appeal has been filed prematurely, such notice shall be considered as filed immediately after the time the judgment becomes final for the purpose of appeal". Sparks et al. v. Daniels et al., Mo.App., 343 S.W.2d 661, 662.

The appeal of December 2, 1965, is effective if we consider the final judgment here entered as of September 1, 1965, or as of February 21, 1966, when the nunc pro tunc order was made. McDaniel et al. v. Lovelace et al., Mo.App., 392 S.W.2d 422, 427.

Defendant's first contention on appeal is that it was error to overrule its motion for directed verdict. We shall consider this point first. Plaintiffs' petition alleges that defendant corporation "by and through its agents, servants and employees entered" upon plaintiffs' lands "for the purpose of constructing and laying a defense missile cable for the United States Department of Defense; that said work and construction covered a period of time from on or about the *1st day of March, 1963 to the 31st day of July, 1963".* (Italics supplied.) The petition alleges further that defendant, in connection with such construction, negligently damaged plaintiffs' crops and livestock and caused plaintiffs to expend time and labor repairing fences and "rounding up" livestock.

For its answer and defense, defendant, in addition to denying any negligence, alleged that plaintiffs had by written instrument and for a cash consideration compromised and settled any claim for damages which they had by reason of the construction. To present and sustain this defense the defendant relies upon three written instruments, which we must describe somewhat in detail. The first, received as plaintiffs' Exhibit 1, is a signed, but not notarized document captioned "Right-of-entry for survey, exploration, and construction of cable line and appurtenances". It is dated December 18, 1961. It is an agreement entered into between the plaintiffs, as owners of a 280 acre farm in Henry County, Missouri, and the United States of America. The subject matter reference thereon is to "Whiteman A.F.B. Interstate Communication System". Paragraph 1 of this instrument authorized the Government to do exploratory work over the whole farm preliminary to the possible selection of a route and the construction of an underground cable line on plaintiffs' farm. Paragraph 2 authorized construction of such a line at any time within 36 months. Each paragraph recited that the Government or its assignee would be liable for any damages incurred by the plaintiffs from "activities authorized" under the paragraph. We set out the two paragraph verbatim:

"1. The Owner hereby grants to the Government the assignable and irrevocable right to enter upon the lands described below, at any time within a period of twenty-four (24) months from the date of this instrument, in order to survey; make test borings; stake-out the center-line of the cable line which is to be constructed over a portion of the lands described below; and to carry out other

necessary work in connection therewith; it being understood that, whether or not the proposed cable line is constructed over any portion of the lands described below, the Government or its assignee will be responsible for any damage to crops, trees, shrubbery, fences, improvements, and the land itself, resulting directly from the activities authorized under this Paragraph, either by repairing such damage or by making a cash settlement with the Owner in lieu thereof.

"2. The Owner hereby grants to the Government the assignable and irrevocable right to enter upon the lands described below at any time within a period of thirty-six (36) months from the date of this instrument, in order to place a cable line at least 36 inches below the surface of said lands; to place junction boxes, manholes, and other appurtenances, extending to or above the surface of said lands, as necessary; to clear trees, shrubbery, and underbrush, as necessary; and to perform related construction work, as necessary, with the understanding that the Owner will not permanently remove or shift the soil or rearrange the contours or change the level of the surface of the said 35-foot strip, by terracing or otherwise, except after having given 120 days' advance written notice to the Base Commander of his intention so to do, in order that the Government may, if it so desires, adjust the depth of the cable. The work under this Paragraph will be done within a strip of land 35 feet in width, running through the lands described below, provided that the Government or its assignee shall have the right of ingress and egress over other lands of the Owner, which right shall be exercised in a reasonable manner. *After the cable line and appurtenances have been placed,* the Government or its assignee will be responsible for any destruction of or damage to crops, trees, shrubbery, fences, improvements, and the land itself, resulting directly from the activities authorized under this Paragraph, either by restoring or repairing, such damage, or by

making a cash settlement with the Owner in lieu thereof". (Emphasis supplied.)

The underlined phrase, standing alone, might be considered as ambiguous as to whether or not the Government was liable for damages incurred during construction or only damages arising thereafter. However, paragraph 3 of the instrument specifically and separately provides that the Government shall be liable "for any future loss or damage". We believe that under this instrument the Government is liable for construction damage. The third paragraph also recites *that after the work under Paragraph 2 is completed,* the Government or its assignee will acquire a permanent right-of-way easement.

Plaintiffs' Exhibit 2 is the "Grant of Easement for Cable Line and Appurtenances". It is dated September 18, 1963, is signed and acknowledged by plaintiffs as owners and recites a consideration of $244.00. It is just what the name implies—an easement across plaintiffs' lands where the cable line had already been constructed.

The third instrument marked Defendant's Exhibit 3, is denominated "Supplemental Agreement", and also bears the date September 18, 1963. We set out pertinent parts of this document.

"WHEREAS, Paragraphs 1 and 2 of said agreement" (reference to Exhibit 1) "provide that the Government shall be responsible for damages arising from the activity of the Government, its officers, agents, employees, or representatives on said land, and in the exercise of rights under said agreement; and

"WHEREAS, it has been determined that the Government's activities on said land caused such damages for which the Government is responsible to make a cash settlement thereof to the Owner under the provisions of said Paragraphs 1 and 2; and

"WHEREAS, it has been determined that the monetary amount of this damage is One Hundred Seven Dollars ($107.00),

and that such an amount is fair and reasonable, and that payment of this sum in cash to the Owner is in the best interest of the Government,

"NOW, THEREFORE, in consideration of the premises, the parties mutually agree as follows:

"1. That the Government has paid to the Owner the sum of One Hundred Seven Dollars ($107.00), *as full payment and consideration for damages caused to date by reason of Government activities on said land,* the receipt of which is hereby acknowledged." (Italics added.)

It is agreed by the parties that defendant company between the dates of March 1, 1963 and July 31, 1963, constructed the missile cable line. We must further remember that plaintiffs alleged their damages were sustained during this period and specifically prior to July 31, 1963. The contract or agreement under which the Government authorized defendant company to build the line is not in evidence. It is evident, however, that whatever authority defendant company had to enter upon plaintiffs' lands and construct the line came to it from the United States Government. This is not disputed and is in effect conceded. Defendant says this Supplemental Agreement is a release for all damages incurred by plaintiffs in such construction.

For their pleaded Reply to this defense plaintiffs say the release was for tree damage alone, and that if it covered anything else, the release was procured by fraud and misrepresentation on the part of the Government. The trial judge ruled out any oral testimony that the release was for tree damage alone. Such testimony would vary the terms of this written agreement which on its face seems to be clear and unambiguous in this particular respect. The plaintiffs never offered any testimony as to any misrepresentations by any Government representative.

Defendant's motion for directed verdict presented at the close of all the evidence (defendant offered no evidence except the document which we have referred to as Defendant's Exhibit 3) asserts that "all acts of defendant upon plaintiffs' lands were done by defendant under authority of the United States Government in the construction and laying of the cable line for the construction and laying of which plaintiffs had granted the United States Government a right of entry, that prior to September 18, 1963, defendant had completed all work upon plaintiffs' lands, that on September 18, 1963, payment was made to plaintiffs by the United States Government of all of plaintiffs' claims arising out of the construction work in connection with said cable line and that in consideration of said payment plaintiffs executed a release in full of all claims, and that, as so shown, full payment has been received by plaintiffs for the claims asserted herein".

■ On appeal plaintiffs assert that the United States of America is liable in negligence actions only where there is a showing that an employee of the Government committed the negligent act and that defendant was not a Government employee. The doctrine of "Governmental immunity" arising from the ancient basic rule that the "King can do no wrong" is generally and commonly understood. It is not, we think, necessary to cite authority for the existence of that proposition. The Government cannot be sued without its consent. Government would not be liable for any damages in the acquisition and construction of this missile cable line unless Congress in its legislative authorization for such acquisition and construction provided for liability and authorized payment of damages which it doubtless had to do or else be guilty of trying to take private property without just compensation. Since Government so contracted and paid therefor and such authority is unquestioned here, we assume it was legislatively authorized. In the case before us the Government (Exhibit 1) assumed liability for (1) any damages resulting from exploratory activities and (2) specifically contracted that

the "Government or its assignee" would be liable for "any destruction of or damage to crops, trees, shrubbery, fences, improvements and the land itself resulting directly from the activities authorized under this Paragraph". Plaintiffs in their petition claimed damage to their crops, fences and livestock. Damage to crops and fences were items for which the Government assumed liability. It did not specifically assume liability for losses to livestock or for loss of time in "rounding up" livestock. However, the release covered "damage caused to date by reason of Government activities on said land". This paragraph just referred to was the one which authorized construction of the missile line. We believe the Government had accepted liability and had given consent to be sued in this matter and hence plaintiffs' authorities that "a release against a defendant who was not liable does not exonerate a defendant who is liable", are not in point, even if such were the law. See New Amsterdam Casualty Co. v. O'Brien et al., Mo.Sup., 330 S.W.2d 859, 863, and Abbott v. City of Senath, Mo.Sup., 243 S.W. 641, 642, contra. (Quoted later in this opinion.)

The release (Exhibit 3) signed by plaintiffs on September 18, 1963—more than six weeks after construction of the cable line was completed and more than six weeks after they had incurred their damages under their own allegations—recited that: "The Government shall be responsible for damages arising from the activity of the Government, its officers, agents, employees or representatives on said land" and "it has been determined that the Government's activities on said land caused such damages for which the Government is responsible". What activities were there except construction of the cable line by defendant? Then follows a recitation of an agreement that $107.00 is a "fair and reasonable amount" and receipt thereof is acknowledged by plaintiffs "as full payment and consideration for damages caused by reason of Government activities * *". Plaintiffs say the $107.00 in damages paid

by the Government could only be for "exploratory damages under Paragraph 1 of plaintiffs' Exhibit 1". We disagree. Although it was never followed up, plaintiffs in their pleading asserted that the $107.00 was paid for damages to trees. Certainly the trees were not damaged during any exploratory work. The release itself specifically accepts liability under both Paragraphs 1 and 2, and recites the cash settlement is "under the provisions of said Paragraphs 1 and 2".

We quote from the Supreme Court opinion in Abbott v. City of Senath, 243 S.W. 641, 642:

"It is a just and well-established doctrine that there shall be but one satisfaction accorded for the same wrong. If one be injured by a tortious act, he is entitled to compensation for the injuries suffered, and, if several persons are guilty in common of the tort, the injured one has his right of action for damages against each and all of the joint tort-feasors, and may at his election sue them individually or together. But if he receive full satisfaction from one of them, his right of action against the other is thereby extinguished.

\*      \*      \*      \*      \*      \*

"Plaintiffs' intestate having made a claim against the Senter Commission Company for injuries received from the falling awning, and having received payment in satisfaction of such claim, she is estopped to now assert that there was in fact no liability on the part of the company, and that it was not a joint tort-feasor".

In New Amsterdam Casualty Company v. O'Brien et al., Mo.Sup., 330 S.W.2d 859, 863, claimant took a release in full from one alleged tort-feasor and then sought to collect further from another alleged joint tort-feasor. We quote from the opinion:

"Neither may appellant escape whatever legal effect the release may have

upon his action now pending against respondents by now asserting that Amsterdam was not a joint tort-feasor with respondents or that there was no evidence that it was. Having received valuable consideration from Amsterdam for a release from liability as an alleged tortfeasor, he will not be permitted to seek further beneficial result to himself by asserting that 'I pursued the defendant falso clamore, and I took the money by way of a settlement of a pending action in which I never could have recovered' ".

The rule was declared by this court in Booker v. Kansas City Gas Company, 231 Mo.App. 214, 96 S.W.2d 919, 923, as follows:

"It is the law that a claimant may settle with one of two or more joint tort-feasors and release that particular joint tort-feasor from further liability, and still hold and sue the others for the balance of his damages. He can have but one satisfaction; but he can accept a part of that satisfaction from one and release him in full, continuing to hold the others for the balance. * * * But if the release is in full of all damages, as distinguished from a release of one codefendant or joint tort-feasor, then the cause of action is dead and cannot be revived. Abbott v. City of Senath, 243 S.W. 641, loc. cit. 642".

We believe defendant's motion for directed verdict should have been sustained because of the effect of the release. In our opinion this is so if (1) the Government is the only one liable because defendant company was only its agent, employee or representative, or (2) even if both the Government and the defendant company were joint tort-feasors and both liable, the release plainly purports to be a release in full for the damages which had occurred prior to September 18, 1963, and specifically includes Paragraph 1, which covers the exploratory work, and Paragraph 2, which covers the construction, and these two paragraphs include all incidents upon which plaintiffs predicate damages, or (3) even if the Government were not liable and only defendant were liable, still plaintiffs released the whole claim and if this is so, plaintiffs are not entitled to recover.

In New Amsterdam Casualty Company v. O'Brien et al., supra, 330 S.W.2d at page 864, our Supreme Court quoted with approval the following from Kahn v. Brunswick-Balke-Collender Co. et al., Mo.App., 156 S.W.2d 40, 42:

" 'The principle of law has never been altered that a plaintiff's right to recover and have satisfaction for his injuries, whether caused by one or many wrongdoers, is single, and if he receives satisfaction for the injuries once, whether in court or out of court, from one wrongdoer, he cannot recover any further amount from another wrongdoer. (citations)' ".

The Supreme Court commented further as to the Kahn case and said:

"The writer of the Kahn opinion then went on to hold that the evidence showed plaintiff had made a settlement of her claim in full with one of the joint tort-feasors and was not entitled to proceed further against the other".

Plaintiffs may have settled their claim too cheaply but we believe it *was settled* by the release given to the Government and it was reversible error not to sustain defendant's motion for directed verdict. It is therefore unnecessary to consider the additional assignments.

The judgment is reversed and the cause remanded with directions to enter judgment for defendant.

SPERRY, C., not participating.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur.