**STATE of Missouri, Respondent,**

v.

**David ATKINS, Appellant.**

**No. 57302.**

Supreme Court of Missouri,
Division No. 1.

May 14, 1973.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Sp. Asst. Atty. Gen., St. Louis, for respondent.

James W. Huck, Public Defender Bureau, St. Louis, for appellant.

BARDGETT, Judge.

Defendant-appellant David Atkins was found guilty of murder in the second degree, a felony, by a jury which assessed punishment at fifty years' imprisonment. The court entered judgment accordingly and defendant appeals. Notice of appeal was filed prior to January 1, 1972. This court has jurisdiction. Mo.Const., Art. V, § 31(4), as amended 1970, V.A.M.S.

Defendant does not question the sufficiency of the evidence.

On the evening of March 5, 1970, in an area known as the Wellston Loop which is located just to the west of Hodiamont Avenue, between Easton and Theodosia Avenues, in St. Louis, Missouri, Adam Shelton, Sr., was stabbed several times and died as a result thereof. Defendant was charged with first-degree murder and as stated was convicted of second-degree murder.

Defendant maintains two points on this appeal.

The first point is: "It was error for the Court to overrule the defendant's objection to Detective James Dowd's testimony in which he stated that a witness [John Simmons] who did not testify at the trial had picked the defendant out of a police line-up as one of 'the people . . . having participated in that fatal stabbing.'"

Defendant testified at trial and admitted that he and two of his companions were involved in a fight with the deceased and admitted he may have kicked deceased; however, defendant denied having a knife, denied stabbing the deceased, and denied seeing the deceased stabbed by anyone. One of defendant's witnesses and two of the state's witnesses testified that John

Simmons was present. During the direct examination of Detective James Dowd by the prosecutor concerning a lineup conducted March 7, 1970, the following occurred:

"Q. Now, did anyone in your presence identify any of the people in that lineup as having participated in that fatal stabbing?

A. Yes.

Q. Could you name anyone who did?

A. Adam Shelton, Jr., a witness by the name of Lang, and a witness by the name of Simmons.

MR. HUCK [defense counsel]: Objection, Your Honor. No foundation laid this man was even there.

THE COURT: What is your objection?

MR. HUCK: No foundation laid this man was ever even there.

THE COURT: What man?

MR. HUCK: Mr. Simmons.

THE COURT: Overruled."

■ Defendant contends the testimony of Detective Dowd was prejudicial hearsay and places principal reliance on State v. DeGraffenreid, 477 S.W.2d 57 (Mo.banc 1972) and State v. Wynee, 353 Mo. 276, 182 S.W.2d 294 (1944). The testimony complained of was hearsay and under the holding in State v. DeGraffenreid, supra, was objectionable as hearsay. In the instant case, there was no objection to either of the two questions quoted above even though both questions called for a hearsay answer. Furthermore, when an objection was made, it was made to an isolated portion of the answer given by the witness and the objection was not even remotely based on hearsay grounds.

■ The court will not review this assignment of error on hearsay grounds because the assignment raises an objection not made at the time the testimony was given. State v. Hale, 371 S.W.2d 249, 253

(Mo.1963), State v. Hernandez, 325 S.W. 2d 494, 496 (Mo.1959). The point is overruled.

Defendant's second point is: "It was error for the trial court not to allow the defendant to introduce into evidence for impeachment purposes the testimony given by Adam Shelton, Jr., and Armon Lang in a deposition taken in a companion case when the State of Missouri had stipulated to the use of said depositions."

Depositions of state witnesses Adam Shelton, Jr., and Armon Lang were taken in a companion case. These depositions were used by defense counsel in the cross-examination of Shelton, Jr., and Lang for the purpose of asking the witnesses if they had made the prior statements and thereby laying the proper foundation for the admission into evidence of the prior statements the witnesses did not admit to having made. In this case each of the two witnesses, after having the alleged prior inconsistent statements read to them, and being asked if he made each particular statement, responded by admitting to having made some statements and denying or not recalling having made others. During the presentation of defendant's case, defense counsel desired to read to the jury certain questions and answers from the two depositions on the basis that they were contradictory to the witnesses' testimony at trial and the witnesses did not admit to having made the statements attributable to them in the depositions. In this connection, defense counsel stated, ". . . I want to prove by use of these depositions that these boys actually did say what yesterday I said [they] said." This statement referred to defense counsel's cross-examination of these two witnesses during which he read certain deposition questions and answers to the witnesses and asked if they had made the statements read to them from the deposition. Defense counsel made an offer of proof by reading into the record the deposition questions and answers which he desired to read to the jury. The court sustained the prosecutor's objection to the of-

fer on the grounds that Rule 57 sets forth the circumstances under which depositions may be read into evidence and none of those circumstances were present in the instant case.

Rule 57.29, V.A.M.R. does not pertain to the use of depositions for the purpose of showing prior inconsistent statements of a witness nor does it provide any basis for refusing to permit a party to read to the jury a prior statement of a witness which is inconsistent with the witness's testimony at trial. When used for impeachment purposes, a deposition does not differ from any other type of evidence of a prior inconsistent statement, such as signed or unsigned statements, nor the testimony of another person that a witness orally made a statement inconsistent with that witness's testimony at trial, except perhaps as to the weight a jury may give to a deposition over other types of unsworn statements. The deposition merely functions as the evidence by which a party undertakes to prove that a witness did give a different version of the affair at a prior time and forms the basis for argument by counsel and a determination by the jury that the testimony given by the witness at trial is not credible.

The purpose, therefore, of reading the prior inconsistent statements to the jury (assuming the proper foundation has been laid) is to have an evidentiary basis upon which the jury can find that the witness did in fact make such a prior statement. Before the alleged prior inconsistent statement can be admitted in evidence, there must be some evidence that the witness made such a statement. In the instant case this was satisfied by the stipulation of the parties that the depositions of the two witnesses were an accurate record of the questions asked of each witness and the answers given by each witness. At that point the portions of the depositions containing questions and answers previously read to the witnesses, which the witnesses did not admit to having previously made, and which were at variance with the witnesses' testimony at trial, became admissible in evidence. It is well settled that prior inconsistent statements of a witness are admissible for impeachment as affecting his credibility. State v. Rodebush, 487 S.W.2d 531 (Mo.1972); State v. Banks, 468 S.W.2d 623, 625 (Mo.1971); State v. Cross, 357 S.W.2d 125, 128 (Mo.1962); State v. Stamper, 314 Mo. 635, 285 S.W. 437, 439, (Mo. 1926). For an accurate description of the prejudicial effect of not permitting a party to put the prior inconsistent statements into evidence before the jury after proper foundation has been laid, see Booker v. Kansas City Gas Co., 231 Mo.App. 214, 96 S.W.2d 919, 922 [1] (1936).

The court, in this case, need not review the particular portions of the depositions which were offered as prior inconsistent statements because of the following statement the court did make to the jury with the consent of both parties:

"THE COURT: Members of the jury, I have been asked to give you this information. You will remember that Mr. Huck on behalf of the defendant, on cross-examination of certain witnesses, questioned them with respect to what they may have said on depositions. He questioned them whether or not certain questions were asked and whether or not certain answers were given. I have been asked to tell you that the State concedes that whatever Mr. Huck read, the questions and the answers, were in fact—those questions were in fact asked of those witnesses at the time their depositions were taken and that the answers which Mr. Huck read were in fact made by those witnesses at the time their deposition[s] [were] taken."

Had defense counsel been permitted to read the alleged prior inconsistent statements to the jury and had the foregoing information not been given to the jury by the court, it would have been for the jury to determine whether or not the prior statements were in fact made by the particular witnesses. The court's state-

ment to the jury resolved that question in favor of the defendant's position, to wit: The witnesses did in fact make the statements in the depositions that defense counsel attributed to them during cross-examination. The purpose the defense counsel gave for desiring to read from the depositions was fully satisfied and therefore defendant was not prejudicel by the court's refusal to permit the questions and answers from the depositions of the two witnesses to be re-read to the jury in defendant's case. Thereafter the credibility of the witnesses was, as usual, a matter for the jury to determine. The point is overruled.

The judgment is affirmed.

HOLMAN, P. J., and FINCH, C. J., concur.

SEILER, J., not sitting.