243 S.W.2d 122 (1951)
WILLIAMS
v.
RILEY.
No. 28198.
St. Louis Court of Appeals, Missouri.
October 16, 1951.
Rehearing Denied November 15, 1951.
*123 Robert L. Brown, and Richard M. Stout, of St. Louis, for appellant.
William P. Carleton, of St. Louis, for respondent.
BENNICK, Presiding Judge.
This is an appeal from an order overruling a motion to quash an execution issued upon a judgment for $660.80 which had been rendered by the magistrate court and thereafter transcribed and filed in the circuit court.
The judgment, which was by default, had been rendered in favor of plaintiff and against defendant in an action upon a promissory note which had been executed by defendant in connection with his purchase of an automobile from plaintiff. The judgment was rendered on August 26, 1948, and the transcript of the same was filed with the clerk of the circuit court on October 28, 1948.
Execution was issued upon the judgment on November 1, 1950. Thereupon defendant filed his motion to quash the execution upon the ground that the judgment had been satisfied and plaintiff's right to enforce it extinguished by virtue of a certain release which had been executed by plaintiff to defendant on December 27, 1949. The whole question for our consideration is whether the lower court was correct in overruling the motion to quash upon the basis that the release had not operated to relieve defendant from liability on the judgment.
Defendant is a professional boxer, and the release in question was executed upon the termination of an agreement or arrangement under which plaintiff had served as defendant's manager in return for a percentage of defendant's earnings in the ring.
The managerial contract was entered into between plaintiff and defendant on November 29, 1948, just one month after the transcript of plaintiff's default judgment against defendant in the magistrate court had been filed with the clerk of the circuit court. Defendant afterwards became dissatisfied with plaintiff's management and entered into negotiations which culminated in the execution of the written agreement or release by which the managerial contract was terminated and rescinded upon defendant's payment to plaintiff of the sum *124 of $2,767.67. The negotiations were concluded at a conference between counsel for the respective parties, and the release which was prepared on that occasion was drawn to read as follows:
 "St. Louis, Missouri,
 December 27, 1949.
"Whereas, on or about the 29th day of November, 1948, Robert H. Williams entered into a written agreement with Charles Riley whereby the said Robert H. Williams did agree to manage the said Charles Riley as an athlete for mutual services to be rendered each to the other, and the aforesaid Charles Riley did agree to box under the exclusive direction, control and management of the aforesaid Robert H. Williams, now therefore,
"This agreement witnesseth that for and on consideration of the sum of $2767.67 (Two thousand seven hundred and sixty-seven and 67/100ths Dollars) in hand paid, the receipt from said Charles Riley is hereby acknowledged by the said Robert H. Williams, the aforesaid contract is hereby terminated, cancelled and for naught held, and each of the parties thereto does by these presents release the other from any other obligations, liabilities or claims which they may have against the other.
"In the event Charles Riley does fight Willie Pep for the featherweight championship of the world, and the sum herein referred to is paid within 24 hours of the said fight, said Robert H. Williams shall have no further claims against Charles Riley for services as manager.
 "/s/ Robert H. Williams.
 "/s/ Charley Riley."
The controversy arises over the interpretation of the language of the release by which, after specifically terminating the managerial contract, it then went on to provide that "each of the parties thereto does by these presents release the other from any other obligations, liabilities or claims which they may have against the other".
Defendant contends that the effect of such language was to relieve him, not only from any continuing obligation under the managerial contract, but also from any further liability under the judgment which plaintiff had obtained against him in the magistrate court, even though, as will presently appear, the existence of such judgment was not mentioned at any time in the course of the negotiations leading up to the execution of the release.
Plaintiff argues, on the other hand, that the release was intended to be limited to the settlement of the claims and liabilities of the respective parties arising out of the managerial contract; that the judgment, which antedated the managerial contract, was not in the contemplation of the parties or even known to defendant at the time the release was executed; and that the lower court was therefore correct in its decision that the release had not served to satisfy the judgment or to extinguish defendant's liability under it.
In interpreting the language of a release, the primary rule of construction, just as in the case of the construction of any other contract, is that the intention of the parties shall govern. Consequently any question regarding the scope and extent of a release is to be determined according to what may fairly be said to have been within the contemplation of the parties at the time the release was given, which, in turn, is to be resolved in the light of all the surrounding facts and circumstances under which the parties acted. A general release which is not restricted by its terms to particular claims or demands will ordinarily be regarded as embracing all claims or demands which had matured at the time of its execution. However a release which is confined by its terms to claims or demands arising out of a specific matter will be restrained in its effect to the purposes of the bargain; and any language general in form, when used in connection with such specific matter, will be presumed to have been used in subordination to it, and will be construed and limited accordingly. Grumley v. Webb, 44 Mo. 444; Kopp v. Traders Gate City Nat. Bank, 357 Mo. 659, 210 S.W.2d 49; Yeager v. St. Joseph Lead Co., 223 Mo.App. 245, 12 S.W.2d 520; 53 C.J. 1266-1269; 45 Am.Jur., Release, secs. 28-30.
*125 As disclosed by plaintiff's evidence, the proposal for the termination of the managerial contract was initiated by defendant, who had announced that he would not engage in any more fights unless he was released from plaintiff's management. At that time negotiations were already under way for matching defendant in a world's championship title fight, which fact no doubt accounted for the inclusion of the concluding paragraph in the release agreement now in question.
Plaintiff was positive in his testimony that in the conferences leading up to the execution of the release, the discussion was confined to matters pertaining to the termination of the managerial contract. The judgment in question was never referred to in any manner; and after agreeing upon the figure by which defendant was to be allowed to purchase his release from plaintiff's management, the only other reference to any indebtedness between the parties was with respect to an item aggregating some $25 of pocket money which plaintiff had advanced to defendant over a period of time, and for which plaintiff stated he would make no claim.
Defendant's evidence was of like accord, and at least gave assurance that the judgment was not in actual contemplation of either defendant or his counsel, since neither of them was aware of its existence.
Except for the mere employment of general language by which each party purported to release the other from "any other obligations, liabilities or claims", there is nothing whatever to support defendant's contention that the effect of the release was to extinguish his further liability under the judgment. On the contrary, in the total absence of anything specific which might be taken to indicate that the parties were intending to include the judgment within the scope of the settlement they were making, the natural and logical assumption would be that their only purpose was to terminate the managerial contract for the agreed consideration, and at the same time wipe out any and all possible claims which either of them might have against the other growing out of the contractual relationship which had theretofore existed. To hold otherwise would not only do violence to the rules for the construction of release agreements, but would also work a distortion of the purpose for which the evidence shows that the release was given.
The order of the circuit court overruling defendant's motion to quash the execution should be affirmed, and it is so ordered.
ANDERSON, J., concurs.
RUDDY, J., not sitting because not a member of the court at the time of argument and submission.