STATE of Missouri ex rel. J. D. S., a minor child by his guardian ad litem, and J. D. M., Relators,

v.

The Honorable Ninian M. EDWARDS, Judge of the Juvenile Court of St. Louis County, Missouri, Respondent.

No. 60634.

Supreme Court of Missouri, En Banc.

Dec. 18, 1978.

Robert C. Dodson, Festus, for relator (Father).

Elizabeth R. Levine, Clayton, Michael Bastian, St. Louis (of counsel), for relator (Atty. and Guardian).

Martin Schiff, Jr., Clayton, for respondent.

RENDLEN, Judge.

Relators J.D.M., the putative father and J.D.S., his illegitimate son, sought prohibition in the Court of Appeals, St. Louis District, to prevent the Judge of the Juvenile Court of St. Louis County from transferring the guardianship and custody of the child to the State Division of Family Services after terminating the parental rights of only the child's unwed mother. The Court of Appeals issued its writ prohibiting respondent from making such custodial change. The cause was transferred here and though such transfer was ordered following opinion in the Court of Appeals, "we consider the case the same as one that had been commenced as an original proceeding in this court." *State ex rel. Adrian Bank v. Luten*, 488 S.W.2d 636, 637 (Mo. banc 1973).

The principal questions presented are (1) may the State constitutionally terminate parental rights without providing the putative father an opportunity to protect his status as a parent, and (2) if he is entitled to such opportunity, against what standard shall his substantive rights be measured in parental termination proceedings?

The relator-child was born out of wedlock on May 19, 1976, and almost immediately the mother K.L.S., then a minor, executed her consent to the termination of parental rights and a waiver of the necessity of consent to her son's future adoption. The Division of Family Services placed the child in a foster home about May 24, 1976, where he has remained under order of respondent throughout these proceedings.

The father states that since the birth of the child, he has repeatedly demanded custody and that "visits between the father and child have continuously been arranged through the Agency since the child's birth." Respondent in his brief concedes the correctness of these statements.

On March 22, 1977, the juvenile officer of St. Louis County, Missouri, petitioned the Juvenile Division of the Circuit Court of St. Louis County, naming K.L.S. as the mother and J.D.M. as the father, praying that the court terminate all *parental rights of the mother* and transfer legal custody of the child to the Division of Family Services. Notified of the proceedings, the father filed a request for an admission that he was the natural father of the child, and the mother and juvenile officer admitted the relationship.

On April 6 a hearing was conducted, but before testimony was taken the father moved (1) to intervene under Rule 52.12(a) and (2) to dismiss for failure to state a cause of action, contending that termination of his parental rights without his consent constituted a denial of due process and equal protection in violation of the fifth and fourteenth amendments to the United States Constitution and art. I, §§ 2 and 10 of the Missouri Constitution. Respondent overruled both motions whereupon evidence was taken and at the close of the hearing, the father moved for a judgment against the juvenile officer for the same reasons he had previously advanced. Respondent also overruled this motion, stating that under §§ 211.441–.511, and particularly § 211.501, RSMo 1969, only the mother of an illegitimate child has parental rights and unless prohibited by a court of competent jurisdic-

tion, he would on June 1, 1977, enter a judgment terminating the parental rights of the mother, declaring as a matter of law that the natural father "does not have any parental rights in the child," and transferring custody of the child to the Division of Family Services, all pursuant to §§ 211.-441–.511, RSMo 1969, and ch. 453, RSMo 1969 and Supp.1975.

The Court of Appeals, in the subsequent prohibition action, ruled that the termination of parental rights statute, §§ 211.-441–.511, RSMo 1969, and the adoption code, ch. 453, RSMo 1969 and Supp.1975, are unconstitutional "insofar as they deny putative fathers parental rights" and accordingly prohibited respondent from entering the order placing the child with the Division of Family Services.

The then controlling statute on termination of parental rights[1] established the following procedures: A petition for termination may be filed "as provided in other cases of children coming under the jurisdiction of the court, . . . ." § 211.441. It shall include the reasons for seeking termination and, in the case of an illegitimate child, the name and address of the mother and of the father if he has been adjudged the father or has acknowledged his paternity in writing. § 211.451(3) and (5). A hearing by the juvenile court is required. § 211.461.1. Among the persons to be summoned and to receive a copy of the petition are the *parents* of the child; also, summons shall issue to any persons whose presence the court deems necessary or whose presence is requested by the parent, guardian or petitioner. *Id.* In order to terminate parental rights, the court under § 211.501.1 must find that such termination is in the best interest of the child and that any one of several conditions prescribed in § 211.-441[2] must exist.

The key statutory section here at issue is § 211.501.2, which provides:

If the court terminate[s] the parental rights of both parents, [or] *of the mother*

---

1. The General Assembly has enacted a new termination of parental rights statute effective in September, 1978. H.B. 972, 1978 Mo.Legis. Serv. 270 (Vernon) (codified as §§ 211.-442–.492, RSMo). § 211.442 of the new statute addresses the rights of the putative father as follows:

> As used in this act 'parent' means a biological parent or parents of a child, as well as the husband of a natural mother at the time the child was conceived, or a parent or parents of child by adoption, and includes both the mother and putative father of an illegitimate child. The father of an illegitimate child shall have no legal relationship unless he, prior to the entry of a decree under this act has acknowledged the child as his own by affirmatively asserting his paternity; provided, however, that a parent whose identity is known and who can be personally served, shall be served by process as provided in Chapter 506 of the Revised Statutes of this state and made a party to any action under this act.

§ 211.487.2 provides, "In any action for termination of parental rights pending prior to the effective date of this act, the law in effect at the time of the filing of the petition for termination of parental rights shall govern the hearing on such petition and any appeal therefrom." Accordingly, our decision here and subsequent proceedings in this case concern the prior law and its application.

2. The conditions listed in § 211.441 are:

(1) When the parents have consented in writing to the termination of their parental rights.

(2) When it appears by clear, cogent and convincing evidence that for one year or more immediately prior to the filing of the petition

(a) The parents have abandoned the child;

(b) The parents have willfully, substantially and continuously or repeatedly neglected the child and refused to give the child necessary care and protection;

(c) The parents, being financially able, have willfully neglected to provide the child with the necessary subsistence, education or other care necessary for his health, morals or welfare or have neglected to pay for such subsistence, education or other care when legal custody of the child is lodged with others;

(d) The parents are unfit by reason of debauchery, habitual use of intoxicating liquor or narcotic drugs or repeated lewd and lascivious behavior, which conduct is found by the court to be seriously detrimental to the health, morals, or well-being of the child;

(e) The parents have been found incompetent under chapter 475, RSMo, and are incapable, and there are reasonable grounds to believe that they will continue to be incapable of giving the child necessary care and protection.

*if the child is illegitimate,* . . . it may transfer the guardianship and legal custody of the child to a suitable person, or the state division of welfare [now the Division of Family Services], or a licensed child welfare agency. (Emphasis added.) Respondent construed this section as precluding the putative father from asserting any rights to his minor child in such proceedings. As noted above, § 211.451(3) requires that a petition for termination of parental rights shall name "the father of a child born out of wedlock who has acknowledged paternity in writing or has been adjudged the father . . . ." From this it could be argued that the father of an illegitimate child must be given notice and allowed to participate in any termination proceeding. Notwithstanding this seemingly inconsistent provision of the statute, we believe that respondent correctly construed the crucial statutory section, 211.501.2, as permitting severance of *all* parental rights in the case of an illegitimate child though rights of *only the mother* had been terminated. For the reasons hereinafter discussed we hold that to the extent sections 211.441 to 211.511 so permit, they are unconstitutional.

In *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), the U.S. Supreme Court addressed the constitutionality of an Illinois statute automatically rendering minor illegitimate children wards of the State upon the death of their mother. The unmarried father in *Stanley* had lived with the mother intermittently for eighteen years and three children had been born to them. The Court determined that under the due process clause of the fourteenth amendment the father, having manifested a strong interest in the control and custody of his children, was entitled to a hearing on the issue of his fitness as a parent before the children could be taken from him. The Court pointed out that under the Illinois law,

> the State, on showing that the father was not married to the mother, need not prove unfitness in fact, because it is presumed at law. Thus the unwed father's claim of parental qualification is avoided as 'irrelevant.'

405 U.S. at 650, 92 S.Ct. at 1212. The Court concluded, *id.* at 657, 92 S.Ct. at 1215.

> [W]hen, as here, the procedure forecloses the determinative issues of competence and care, when it explicitly disdains present realities in deference to past formalities, it needlessly risks running roughshod over the important interests of both parent and child. It therefore cannot stand,

and declared the Illinois procedure a constitutionally impermissible denial of process due the putative father. It also ruled, because other Illinois parents were entitled to a hearing on their fitness before their children are removed from their custody, that "denying such a hearing to Stanley and those like him while granting it to other Illinois parents is inescapably contrary to the Equal Protection Clause." *Id.* at 658, 92 S.Ct. at 1216.

It is clear that §§ 211.441–.511, particularly § 211.501, to the extent they deny putative fathers any opportunity for a hearing on their rights in parental termination proceedings, are violative of the due process and equal protection guaranteed by the fourteenth amendment to the United States Constitution and thus void.

■ We now determine the proper standard for application in proceedings convened to determine the substantive rights of putative fathers relative to their children. Section 221.441 provides that *married* fathers' parental rights may be terminated only (1) on a showing by "clear, cogent and convincing evidence" that one of the prescribed statutory conditions (e. g., abandonment or neglect) exists and (2) that termination "is in the best interest of the child." See also § 211.501. A legislative recognition of married fathers' presumption of fitness is manifest in the high level of proof required by the statute to support a finding of unfitness as to them. However, we believe that an unwed father initially has no such strong presumption of parental fitness. The State is not constitutionally required to accord such presumption. In-

stead the State is free to require an unwed father first to prove that he has seasonably demonstrated a meaningful intent and a continuing capacity to assume responsibility with respect to the supervision, protection and care of the child, and the trial court in these proceedings should at the outset examine the extent of such parental concern and capacity as may have been demonstrated by the putative father. On a finding of such concern and capacity, the father is then cloaked with the benefit of the presumption of fitness essentially the same as that enjoyed by other parents and the burden becomes the petitioner's to show by "clear, cogent and convincing evidence," unfitness, waiver or other disqualification of the sort described in § 211.441, RSMo 1969.

Following its decision in *Stanley, supra,* the Supreme Court in *Quilloin v. Walcott,* 434 U.S. 246, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978), found that a Georgia adoption law that had been applied to deny an unwed father authority to veto adoption of his illegitimate child constituted no impermissible deprivation of the parental rights under the due process or equal protection clauses. The Court stated that *Stanley* had recognized the father's interests as substantial and the State's as minimal in the situation then presented. But when an illegitimate child has lived for seven years with the mother and stepfather, apart from the natural father, "*Stanley* left unresolved the degree of protection a State must afford to the rights of an unwed father in a situation, such as that presented here, in which the countervailing interests are more substantial." 434 U.S. at 248, 98 S.Ct. at 551. In regard to the equal protection argument, the *Quilloin* court concluded that the putative father's interests were distinguishable from those of a separated or divorced father. *Quilloin* therefore provides authority for distinguishing under the federal constitution between married and unmarried fathers regarding when and to what extent the presumption of fitness attaches.

■ However, the Court in *Quilloin* approved application of the "best interests of the child" standard for determining the father's rights, apparently without regard to a presumption of fatherly fitness. This standard presents the difficulty that an unwed father, though he may have shown great parental concern, must compete with adoptive parents to establish not only that he is a suitable parent (*i. e.,* meeting a charge of unfitness), but also that he is the *most* suitable of those seeking custody of the children. For those unwed fathers who are fit, and who have demonstrated such parental concern, the standard approved by the U.S. Supreme Court in *Quilloin* seems to represent a diminution of the protection afforded by the due process and equal protection clauses of the United States Constitution set forth in *Stanley.* We are disinclined to so dilute these important rights. We hold that the Missouri Constitution, art. I, §§ 2 and 10, requires as the appropriate minimum standard that the same *presumption of fitness* afforded married fathers in parental termination proceedings be afforded to natural fathers after a reasonable showing of fatherly concern in such cases. The legislature appears to have met and exceeded that minimum standard by the newly enacted parental termination statute.[3]

■ Finally, we consider the intended adoption action for which this termination proceeding is a prelude. Respondent, as a part of his proposed judgment, made the following finding of fact,

> The agency represented to the Court that the said child is suitable for adoption and that the agency has a suitable home available in which it intends to place said child for adoption;

and thereupon ordered,

> Custody of the child is transferred to the Division of Family Services, St. Louis County Office for the foster care, and, further, under the provisions of Sections 453.040 and 453.110, R.S.Mo., 1969, for placement of the child in the best available adoptive home.

---

**3.** See n. 1 above.

Though respondent anticipated the eventual adoption of the child at such time as the requirements of ch. 453 were satisfied, it is apparent that sections 453.030 and 453.040 contain provisions relative to the required consent of the parents which suffer the same constitutional infirmities found in § 211.501.2 above. Section 453.030.3 states that the written consent of the parents of the child shall be required for adoption, except in the circumstances enumerated in § 453.040; however, in the case of an illegitimate child, the consent *"of the mother alone"* suffices. Section 453.040 eliminates the necessity for that written consent when (1) "a parent" has been adjudged to be incompetent; (2) the rights of "a parent" have been terminated, as in proceedings under ch. 211; (3) "a parent" or *"the mother of a child born out of wedlock"* has previously waived the necessity to consent; and (4) "a parent" has abandoned or neglected the child for at least one year. Insofar as these sections deny an unwed father parental rights, they are invalid for the same reasons discussed in relation to proceedings under §§ 211.441–.511. Though our declarations regarding the partial invalidity of these sections of ch. 453 are unnecessary for disposition of the principal issues before us, we believe it important to have spoken to the problem presented by the adoption statute to dispel any inference of statutory validity of these sections that might be drawn from a failure to comment as we have done.

The proposed action of the trial court taken in reliance on the constitutionally-infirm provisions of §§ 211.441–.511, RSMo 1969, is in excess of its jurisdiction. Therefore, the preliminary writ of prohibition is made absolute.

MORGAN, C. J., FINCH, DONNELLY and SEILER, JJ., and SOMERVILLE, Special Judge, concur.

BARDGETT, J., concurs in part and dissents in part in separate opinion filed.

SIMEONE, J., not participating because not a member of the Court when cause was submitted.

BARDGETT, Judge, concurring in part and dissenting in part.

I concur in the holding of the principal opinion that section 211.501.2 is unconstitutional under *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), because the effect of that section is to statutorily bar the putative father from even seeking the adoption of his illegitimate child. In *Stanley* the statute declared unconstitutional barred a putative father from adopting his illegitimate children because the statute declared him unfit as a matter of law. The effect of both the Missouri and Illinois statutes is the same.

However, I dissent from that portion of the opinion that undertakes to set standards for the determination of the rights of putative fathers. The general assembly has covered that subject in H.B. 972 referred to in footnote one of the principal opinion and that law is now in effect. Having declared section 211.501.2 unconstitutional, I would remand the matter to the juvenile court for proceedings in accordance with H.B. 972 (sections 211.242–211.492, RSMo) instead of judicially adopting any other procedures at this time because it is not necessary to do so.