STATE of Missouri ex rel., NORMANDY ORTHOPEDICS, INC., and William F. Luebbert, D.O., and William E. Button, D.O., Relators,

v.

William H. CRANDALL, Jr., Judge of the Circuit Court, County of St. Louis, Division One, and His Successors as Judges of Said Division, Respondent.

No. 60678.

Supreme Court of Missouri, En Banc.

May 17, 1979.

Rehearing Denied June 19, 1979.

Michael J. Pitzer, R. E. Keaney, Moser, Marsalek, Carpenter, Cleary, Jaeckel, Keaney & Brown, St. Louis, for relators-appellants.

George R. Gerhard, William Kelleher, St. Louis, for respondents.

RENDLEN, Judge.

This is prohibition. The Missouri Court of Appeals, St. Louis (now Eastern) District, transferred the cause under Rule 83.02 after opinion, that we might reexamine the following question: Under what conditions does an injured party's general release of an original tortfeasor operate to bar such party's action against subsequent tortfeasors for alleged malpractice in the treatment of the original injuries?

The facts are not in dispute. A one-car accident occurred on October 29, 1970, in which Salvatore Taormina, riding as a guest in the automobile driven by James LaMantia, sustained a fractured left femur. Relators, osteopathic physicians organized in a professional corporation, treated Taormina for his injuries.

On March 19, 1972, Taormina brought suit against LaMantia alleging that because of defendant's negligence, "plaintiff sustained a fracture . . . of the left femur; . . . [and] was obliged to submit to an open reduction of said fracture in an operative procedure whereby a nail was inserted down the shaft of the femur, . . [and] he has been caused to become permanently lame, and that his ability to ambulate, walk, work and labor in the future have been seriously impaired." The petition made no express reference to any negligence or otherwise actionable conduct by relators here. On August 22, 1972, that suit was settled. Receiving $9,000, Taormina executed his written release and the action was dismissed with prejudice under a stipulation providing, "Come now the parties in the above entitled cause and hereby expressly stipulate and agree that the same has been fully and satisfactorily compromised and settled, and is hereby dismissed, with prejudice, at the cost of the defendant." As hereinafter discussed, the terms of the petition and stipulation may be pertinent in further proceedings to the issue of intent.

On October 25, 1972, Taormina filed suit against relators alleging that during treatment they negligently inserted an intramedullary nail of improper length. Neither the original, nor an amended pleading filed in February, 1974, contained allegations of negligent treatment rendered between March 19, 1972, the date Taormina filed his original petition against LaMantia, and October 25, 1972, the date of filing his petition alleging relators' malpractice.

Relators, raising the release as a bar, filed their motions to dismiss and for summary judgment to which Taormina responded with affidavits accompanied by a letter stating that when executing the release he had intended to release only LaMantia and the insurer and that the $9,000 received was not in full satisfaction of his damages. Relators moved to strike these affidavits contending they sought to vary the terms of the release in violation of the parol evidence

rule, and although that motion was not specifically ruled, the trial court's order of September 13, denying relators' motions to dismiss and for summary judgment effectively disposed of the motion to strike. Relators petitioned for prohibition and the Court of Appeals, though issuing its writ, stated, "We would affirm the judgment but, in view of the state of the law as reflected in *Rogers v. Piper*, this case is ordered transferred to the Supreme Court under Rule 83.02 for the purpose of reexamining the existing law." We treat the cause as having been filed originally in and the preliminary writ issued by this court. *State ex rel. J. D. S. v. Edwards*, 574 S.W.2d 405 (Mo. banc 1978).

The general release executed by Taormina appears to be a typical printed form reading in part:

"I. First Party, for himself, or any one claiming through or under him, . . . agrees to release, and does hereby fully and forever release, acquit, and discharge Second Party, his heirs . . . and any and all other persons, firms, and/or corporations whomsoever from any and all liability now accrued or hereafter to accrue on account of any and all claims or causes of action which First Party . . now has or may hereafter have against Second Party . . . and any and all

other persons, firms and/or corporations whomsoever, in any way arising from or out of any and all injuries, losses and damages now known or that may hereafter develop . . . ."

The release also contained the words, "This is a Release in Full."

■ The contention that an instrument containing such language constitutes a bar to subsequent actions is usually said to rest on the principle that a plaintiff may recover only once for his injuries.[1] Construing release provisions such as "This is a release in full," and those purporting to comprehend "any and all actions," and "any and all liability now accrued or hereafter to accrue" from one incident, Missouri cases have held such language evidences full satisfaction of plaintiff's claims. *See, e. g., Abbott v. City of Senath*, 243 S.W. 641 (Mo.1922); *Kestner v. Jakobe*, 412 S.W.2d 205 (Mo.App.1967). The fact that the releases in those cases named only the tortfeasor who provided the agreed consideration did not alter the results. *Id.* In *New Amsterdam Casualty Co. v. O'Brien*, 330 S.W.2d 859 (Mo.1960), it was held that *full satisfaction* was shown though the release named only one tortfeasor and recited consideration of one dollar " 'and other good and valuable consideration.' " While none of the cited cases concerned independent

---

1. In 1915, the General Assembly modified the common law to allow the release of one joint tortfeasor without, as a matter of law, releasing the other. Laws 1915, p. 268 (now § 537.060, RSMo 1969). The statute has been narrowly construed to require that the release provide "specific and clear limitation of the intended scope of the settlement where such consideration is described as partial, rights reserved as to remaining tortfeasors, or other appropriate language," *Liberty v. J. A. Tobin Construction Co., Inc.*, 512 S.W.2d 886, 890 (Mo.App.1974), in order that it not be deemed a bar to claims against remaining joint tortfeasors. However, our disposition of this case is not dependent on interpretation or application of § 537.060 because LaMantia and the physicians were not true joint tortfeasors. Their acts were independent and successive, not joint and concurrent. As this Court stated in *Staehlin v. Hochdoerfer*, 235 S.W. 1060, 1062 (Mo.1921), referring to the original tortfeasor and the subsequently negligent physician,

[T]hey were not joint tort-feasors; they were acting independently of each other; their several wrongs were committed at different times; and the tort of each, being several when committed did not become joint [merely] because its consequences united with the consequences of the other.

Although this Court in *Schumacher v. Leslie*, 360 Mo. 1238, 232 S.W.2d 913, 917 (banc 1950), labeled the original tortfeasor and the physician as "joint tortfeasors with respect to the aggravation," that language did not change the essential holding or principle announced in *Staehlin*. The *Schumacher* court continued, "[T]he two injuries are not so legally connected that the satisfaction of, say, the original injury necessarily bars the suit for malpractice against the physician."

On the other hand, the 1915 abrogation of the common law rule relative to joint tortfeasors "was not designed to affect, and does not affect, the principle that there can be but one satisfaction for the same wrong." *Abbott v. City of Senath*, 243 S.W. 641, 642 (Mo.1922).

successive tortfeasors, others involving such factual situations have reached similar results. In *McQueen v. Humphrey*, 421 S.W.2d 1 (Mo.1967), a settlement was entered between the minor plaintiff (by her next friend) and "[d]efendants and those who might be liable on their behalf," purporting to cover "the cause of action or claim of the [p]laintiff in full and forever." Plaintiff had not sued the physicians at the time of settlement. The court there ruled that the release precluded a subsequent action for malpractice because there was "nothing in the record to indicate that plaintiff did not consider the settlement as complete satisfaction for her injures, . ." 421 S.W.2d at 3. Similarly, in *Rogers v. Piper*, 543 S.W.2d 261 (Mo.App.1976), cited by the Court of Appeals' opinion in the case at bar, the release stated: "RELEASE AND FOREVER DISCHARGE Jack T. Lemmons, his agents and servants, and all other persons, firms and corporations of and from any and all liability, actions, claims, demands or suits whatsoever, which claimants now have or may hereafter have, on account of or arising out of personal injuries or damage to person or property, or impairment of or damage to any right, including loss of time, loss of services of society, and expenses, or other damage sustained by or accruing to the undersigned as the result of an accident, casualty or event which occurred on or about the 26th day of June, 1970, at or near 10300 South 71 Highway in Kansas City, Jackson County, Missouri" and "that the above mentioned sole consideration is accepted in full compromise, settlement, accord and satisfaction of all the aforesaid claims and demands, including all consequences thereof which may hereafter develop as well as those already developed or now apparent." The release further stated, "that this agreement is in compromise and settlement of all claims of every kind." Relying on *McQueen*, the court noted that nothing was shown to contradict plaintiff's having received full and complete satisfaction in return for the release and that it barred the subsequent malpractice action.

These cases do not squarely rule that such language in a release indicates full satisfaction *as a matter of law*. The oft-cited decision of *Abbott* relied heavily on the fact that no extrinsic evidence of the parties' intent or adequacy of consideration had been introduced at trial. 243 S.W. at 642. Similarly the court in *O'Brien* stated that in view of the third-party plaintiff's election not to reveal at trial the "good and valuable consideration" he had received for the release, "he is now in no position to urge upon this court any factor for consideration in determining the effect of the release other than the instrument itself; and, commendably, he does not." 330 S.W.2d at 865. *Kestner* noted that no extrinsic evidence existed indicating plaintiffs "claimed or demanded anything less than full satisfaction." 412 S.W.2d at 208. *McQueen* commented that the plaintiff did not introduce evidence extrinsic to the release instrument seeking to vary its terms. 421 S.W.2d at 3; and the court in *Rogers* stated, 543 S.W.2d at 265:

> Finally Rogers did not avail himself of the right to file affidavits or present any other matter to the court which would be proper under Rule 74.04 in order to show the existence of any fact issue. Absent a showing of any fact issues, the question here presented as to the effect of the release on whether or not Rogers had in fact received full satisfaction for all of his injuries, including the alleged medical malpractice, was a question of law . . .[2]

■■ These cases may be distinguished from that at bar by the fact that plaintiff offered evidence as to partial satisfaction for his injuries and the intended scope of the release. Accordingly, none are overruled except to the extent they may be

---

2. *Staehlin v. Hochdoerfer* did not depart from this pattern. The *Staehlin* court remarked that the intent of the parties in regard to the release "must be gathered from the written releases themselves, considered in connection with the suits they were designed to dispense with," 235 S.W. at 1062, but here too we do not read that statement as a rule of law, but more in the nature of a comment on evidentiary sources available for the decisional process.

contrary to our present holding that a release purporting to comprehend any and all claims arising from a particular incident, including claims against unspecified strangers to the agreement, does not necessarily bar subsequent suits against an unspecified third party.[3]

A leading case in this area is *Ash v. Mortensen*, 24 Cal.2d 654, 150 P.2d 876 (1944), wherein plaintiff released the original tortfeasor as part of a post-trial settlement and then commenced his malpractice action against the attending physician, who raised in defense the settlement of the original action. The California court ruled that no presumption of full satisfaction would be indulged merely because the plaintiff settled with the original tortfeasor who was exposed to liability for the alleged malpractice as well as the original injuries. It further ruled that the question of full satisfaction was one of fact for the jury's determination.

In *Derby v. Prewitt*, 12 N.Y.2d 100, 236 N.Y.S.2d 953, 187 N.E.2d 556 (1962), the New York court also rejected a presumption of full satisfaction from the release of the original tortfeasor, stating, 236 N.Y. S.2d at 958, 187 N.E.2d at 559, "Irrebuttable presumptions have their place in the law but only where public policy demands that inquiry cease. Where the cause of action is single and the liability of one wrongdoer is identical with that of the other, there may be warrant for erecting such a barrier to suit after settlement. However, where, as here, neither of these elements is present, there is no basis or justification for preventing the plaintiff, by an artificial rule of law, from recovering the full compensation to which she would otherwise be entitled for her injuries."

The Iowa Supreme Court in *Smith v. Conn*, 163 N.W.2d 407 (1968), considered a release purporting to release the named tortfeasor, "and all other persons, firms and corporations, from any and all liability whatsoever," arising from an accident on the second parties' property, and held that whether the release was given in consideration of full satisfaction of the injuries suffered from the alleged malpractice of a doctor was a question for the trier of fact. The court referenced ten other jurisdictions in which a similar rule had been adopted.

Kansas joined the trend in *Fieser v. St. Francis Hospital & School of Nursing, Inc.*, 212 Kan. 35, 510 P.2d 145 (1973). The release there at issue ostensibly discharged the named second party "and all other persons, firms or corporations liable or who might be claimed to be liable" for injuries consequent to an automobile accident. The court decided that its precedents had "erroneously treated the parties as joint tortfeasors whose separate independent acts were improperly considered concurrent in time and effect," and overruled them in favor of the view that satisfaction is a question of fact. 510 P.2d at 149.

■ We need not further catalog the cases in which this result obtains;[4] the reasoning is clear. As with any other contract, the lodestar of construction should be "that the intention of the parties shall govern," *Williams v. Riley*, 243 S.W.2d 122 (Mo. App.1951), and as to releases in particular, "[A]ny question regarding the scope and extent of a release is to be determined according to what may fairly be said to have been within the contemplation of the parties at the time the release was given, which, in turn, is to be resolved in the light of all the surrounding facts and circumstances under which the parties acted." *Id.*

---

3. This does not affect the extent of recoverable damages, nor alter the proposition that there may be only one full satisfaction for injuries. As this Court said in *Vinson v. East Texas Motor Freight Lines*, 280 S.W.2d 124, 133 (Mo. 1955): "When an injured party compromises or settles with one of concurrent or joint tort-feasors for a portion of the injuries, the injured person retains his claim . . . against the other tort-feasor and recovery may be had for the balance of the damages for the injury (unless the damage caused by each of concurrent or joint tort-feasors is clearly separable, permitting the definite assignment of responsibility to each)."

4. See Annot., 39 A.L.R.2d 260 (1971) and 1978 Supp. at 9.

at 124. We do no more than put into practice this fundamental principle when we remove whatever legal presumption of full satisfaction may be found in our prior cases interpreting language similar to that in the release before us.

■ Turning now to the question of placing the burden of showing the parties' intentions, we start from the principle that in Missouri, accord and satisfaction, release, prior full satisfaction and the like are affirmative defenses to be proved by defendant. *Jenkins v. Simmons*, 472 S.W.2d 417, 420 (Mo.1971). This burden of persuasion should not shift merely because defendant offered an instrument of release of the sort appearing here and that burden runs to the question of "full satisfaction" and other elements of the defense. In reaching this decision we are persuaded by the value of the Kansas Supreme Court's holding in *Fieser*, 510 P.2d at 151: "When a general release discloses on its face that it has been given to named releasees who denied liability but made payment by way of compromise and settlement, then and in that event other alleged wrongdoers who were not parties to the release and made no payment toward satisfaction can *fairly be called upon to show* that either the release which they rely on was intended to discharge them or that the releasor has received full compensation." (Emphasis ours.)

■ Finally, relators argue that parol evidence should not be permitted to establish the intent of the parties or to construe the language of the agreement because such evidence would vary or alter the terms of the instrument. We do not accept that Taormina's affidavits will "alter and vary" the release. Relators are nowhere listed by name in its provisions and it is they who seek inclusion within its terms on the basis of *their* interpretation of its language. Plaintiff vigorously advances a different interpretation of that language and each side urges a resolution of the inherent ambiguities in a manner favorable to his position. We have hereinbefore determined to dispel the legal presumptions previously indulged in the law as to language of the sort at

issue here, and parol evidence could well be of value in resolving the issue. The contention is denied.

The preliminary writ of prohibition is quashed.

MORGAN, C. J., DONNELLY, J., and SIMEONE, Special Judge, concur.

FINCH, Senior Judge, dissents in separate dissenting opinion filed.

BARDGETT and SEILER, JJ., dissent and concur in separate dissenting opinion of FINCH, Senior Judge.

WELLIVER, J., not participating because not a member of the Court when cause was submitted.

FINCH, Senior Judge, dissenting.

I respectfully dissent.

Taormina sued LaMantia on March 19, 1972, for damages alleged to have resulted from the negligence of LaMantia in an accident which occurred October 29, 1970. That case was settled on August 22, 1972, for $9,000.00 and the case was dismissed with prejudice pursuant to a stipulation which recited that the case had been "fully and satisfactorily compromised and settled." Taormina also executed a release which stated, "This is a Release in Full." It recited that it fully relieved LaMantia "from any and all liability now accrued or hereafter to accrue on account of any and all claims or causes of action which First Party (Taormina) * * * now has or may hereafter have against Second Party (LaMantia) * * * in any way arising from or out of any and all injuries, losses and damages now known or that may hereafter develop * * *."

It is well established that one whose negligence causes injuries to another can be held liable for damages caused by malpractice in connection with the medical treatment of said injuries. *State ex rel. Blond v. Stubbs*, 485 S.W.2d 152, 154 [2, 3, 4] (Mo.App.1972). In the petition which Taormina filed against LaMantia he took cognizance of both the injuries he received

and the treatment which he had received therefor, alleging, as the principal opinion recognizes, that because of LaMantia's negligence "plaintiff sustained a fracture * * of the left femur; * * * [and] was obligated to submit to an open reduction of said fracture in an operative procedure whereby a nail was inserted down the shaft of the femur * * * [and] he has been caused to become permanently lame, and that his ability to ambulate, walk, work and labor in the future have been seriously impaired." The condition for which he sought recovery was the result of the actual injuries plus the treatment therefor.

The stipulation for dismissal with prejudice of the foregoing petition plus the clear and unambiguous language of the release signed by Taormina released LaMantia for all liability growing out of the accident in which Taormina was injured, including liability of LaMantia for any aggravation of those injuries arising out of malpractice in the medical, surgical or hospital services rendered in the treatment thereof. That being true, it follows, I submit, that the release also discharges the relators herein. The clear and unambiguous language of the release so states. In addition to releasing LaMantia and his heirs it goes on to release "*all other persons, firms* and/or *corporations* whomsoever in any way arising from or out of any and all injuries, losses and damages now known or that may hereafter develop from an auto accident at I–70 and St. Charles Rock Road wherein first party (Taormina) was a passenger in an auto driven by second party (LaMantia) occurring on or about the 29th day of October, 1970." (emphasis supplied). It contains no limiting or qualifying language of any kind. In *Liberty v. J. A. Tobin Construction Company, Inc.*, 512 S.W.2d 886 (Mo.App.1974), the court, speaking of a settlement wherein a release is not intended to release others than those specifically named, said at 890:

"This result may be accomplished only by specific and clear limitation of the intended scope of the settlement where such consideration is described as partial, rights reserved as to remaining tortfeasors, or other appropriate language. * * *

"Such reservation or limitation must be expressed clearly and unmistakably * * * ."

Instead of so interpreting and applying the release and stipulation for dismissal in this case, the principal opinion holds "that a release purporting to comprehend any and all claims arising from a particular incident, including claims against unspecified strangers to the agreement, does not necessarily bar subsequent suits against an unspecified third party." In other words, it holds that a release necessarily bars only those persons specifically named in the release. Under the principal opinion clear and unambiguous language in the release which purports to release other unnamed persons as a class will not necessarily be effective to bar subsequent claims against those unnamed persons who are members of the class specifically mentioned in the release. Instead, whether they are released will depend upon a subsequent factual determination as to whether the one executing the release intended thereby to release these unnamed persons and the burden will be on those seeking to be released to show that such was the intention of the one executing the release.

This ruling, as the principal opinion recognizes, is contrary to numerous earlier decisions in this state, some of which it states are no longer to be followed. It is contrary to the well established rule that plain and unambiguous language in a contract shall be given effect and that it is not subject to variance on the basis of parol evidence. The principal opinion states that it does not accept the idea that the affidavits by Taormina and his attorney will alter or vary the terms of the release. However, it does not demonstrate in any way that the language releasing "all other persons, firms and/or corporations whomsoever" as to all injuries, losses and damages is ambiguous. It does not suggest what those words might mean or to whom they might refer if they do not mean precisely what they say. It speaks of ambiguities but lists none. It is true, as the opinion states, that the lodestar of construc-

tion is to determine the intention of the parties which shall then govern, but it is equally true that when language in a contract is clear and unambiguous the intention of the parties is to be determined from the language used and parol evidence is not admissable to vary that language.

The effect of the change made by the principal opinion is to substitute uncertainty as to the meaning of plain and unambiguous contractual language and to require additional litigation to establish the meaning thereof. Under the previously existing rule when a release or stipulation specifies that LaMantia and all others are released from any and all liability in any way arising from or out of injuries, losses and damages in connection with an automobile accident occurring on a specified date and no exceptions or exclusions or limitations are recited, and there is no claim of fraud or over-reaching, the instrument means what it says and it operates as a general release. Under the rule announced in the principal opinion there is uncertainty as to the effect of an instrument which purports to be a full general release of certain named persons plus "all other persons, firms and/or corporations." Whether the instrument effectively releases the latter group can be ascertained only after a second judicial hearing to determine the intention of the one executing the release. In that hearing those persons falling within the group of "all other persons, firms and/or corporations" have the burden of showing that the one giving the release intended to release those persons designated by class as well as those specifically named.

There is no claim in this case of fraud, misrepresentation or overreaching of Taormina. He was represented by counsel who filed suit and then represented him in settlement of the case. He and his attorney were cognizant of the treatment received for his injuries, including placement of the nail in the fractured femur. As previously demonstrated, the allegations of the plaintiff's petition so show. When the case was settled, after all the treatment had been concluded, Taormina stipulated that the case should be dismissed with prejudice and

he gave a general release which recited that he released LaMantia *and all others* for claims and liability which had or thereafter might occur in any way arising out of his injuries, losses and damages. If Taormina and his attorney had wanted to limit their settlement to claims against LaMantia and wanted to reserve his claim for malpractice against the doctors, they could have specifically so stated in the release and in the stipulation for dismissal. They did not do that. There was no reference to § 537.060, RSMo 1969, and the reservations it permits. Instead, Taormina gave an unqualified general release to Taormina *and all others.* Its language is clear and unambiguous.

The principal opinion seeks to justify a different result in this case from that reached in earlier Missouri cases on the basis that by affidavits filed by Taormina and his attorney they offered evidence to show that Taormina did not intend to release the doctors. That is not a valid distinction. There is nothing to demonstrate that the language of the release and stipulation for dismissal were ambiguous and evidence such as that in the affidavits is inadmissible to alter or vary the terms of unambiguous instruments.

Our presently existing rule is sound and adequate. It provides both certainty and flexibility. If, as in this instance, it states that it is releasing specially named persons and all others from any and all liability in any way arising out from or out of a particular automobile accident, it means what it says and releases those specified by class as well as by name. On the other hand, if it is desired to release only a portion of those against whom a claim may exist, such limitation or reservation may be made by specifically so reciting.

The law should not be static and when reason for changing an existing rule of law is clearly demonstrated, a court should make needed changes and should not blindly follow the rule of stare decisis. However, such a need had not been demonstrated and is not present in this case. The principal opinion cites and relies on deci-

sions in other states which have adopted a rule similar to that stated in the principal opinion. It is true that some states have so held but it also is true that many states have retained the rule, previously in effect in this state, that a general unambiguous release such as that given by Taormina has the effect of releasing other tortfeasors who have or might have any liability for damages resulting from injuries received. Annot., 39 A.L.R.3d 260 (1971). In my judgment, our present rule .is sound and should be retained.