Donald **ARTHUR**, Plaintiff-Appellant,

v.

**EVANGELICAL DEACONESS SOCIETY OF the CITY OF ST. LOUIS, INC. d/b/a Deaconess Hospital**, Defendant-Respondent.

No. 41966.

Missouri Court of Appeals,
Eastern District,
Division One.

Feb. 3, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 24, 1981.

Application to Transfer Denied June 8, 1981.

Michael D. Stokes, St. Louis, for plaintiff-appellant.

L. William Higley, W. Munro Roberts, Jr., St. Louis, for defendant-respondent.

STEWART, Presiding Judge.

This is an action for damages for alleged malpractice of the defendant hospital in treating plaintiff's injuries suffered in an automobile accident. The trial court entered judgment in favor of defendant in response to defendant's motion for summary judgment. We reverse and remand.

The issues are whether (1) the court abused its discretion in setting aside a default judgment in favor of plaintiff and if not, (2) whether the consent judgment entered in favor of plaintiff against the operators of the vehicles involved in the automobile accident is a bar to the present action. We shall set out the facts of each issue as they are discussed.

### Default Judgment

■ Plaintiff, on November 28, 1977, filed a notice of claim against defendant before the Professional Liability Review Board. The law firm that represents defendant in this action entered its appearance before the Review Board. After a hearing the Review Board made an award in favor of plaintiff of $100,000.00. On March 13, 1978 defendant rejected the award.

After the rejection of the award by defendant, its counsel asked that plaintiff delay filing a lawsuit until defendant could make a further investigation as to the merits of the claim. After a wait of sixty days with a number of phone calls and no definite response from defendant, plaintiff's counsel, on May 11, 1978, wrote defendant's attorney advising him that it was plaintiff's intention to file suit on May 19, 1978 if he did not hear from defendant concerning settlement negotiations. Plaintiff enclosed a copy of the proposed petition with the letter. Defendant's counsel sent a copy of the proposed petition to defendant. Defendant sent a copy of the petition that plaintiff proposed to file, to its insurance carrier.

Plaintiff filed the present action on May 23, 1978 and service was had upon defendant on June 1, 1978. Defendant did not forward the petition and copy of summons to its insurance carrier under the mistaken belief that it was unnecessary because a copy of the proposed petition that was identical to the copy served on defendant, had been sent to the insurance carrier.

No responsive pleadings were filed on behalf of defendant and on July 11, 1978 "Default and Inquiry" was granted as to defendant. On July 17, 1978 the trial court, upon evidence and testimony adduced by plaintiff entered judgment in favor of plaintiff in the sum of $250,000.00.

On July 18, 1978, the day after the judgment was entered, defendant filed a motion to set aside the default judgment. It also filed an affidavit as part of its motion setting forth facts substantially as set out above. Plaintiff filed an affidavit controverting some of the facts relating to conversations between counsel which are not material to our consideration of the issue under review.

Defendant's motion also alleged that it had a meritorious defense in that the injuries were sustained by plaintiff before any transactions between plaintiff and defendant and that they were caused by persons other than defendant. It further alleged that defendant was not negligent in any way concerning its medical treatment of the plaintiff.

On July 21, 1978, the court held a hearing on the motion to set aside the judgment. The parties appeared by counsel. The court set aside the default and inquiry, the default judgment of $250,000.00 and granted defendant leave to file an answer.

The trial court undertook to take action within thirty days after the judgment was entered. We view the court's action in the light of Rule 75.01 which provides in part, as follows:

"The trial court retains control over judgments during the 30 day period after entry of judgment and may vacate, reopen, correct, amend or modify its judgment for good cause within that time."

We cannot improve upon the statement of the purpose and effect of the rule as set out in *Vaughn v. Ripley*, 416 S.W.2d 226 (Mo.App.1967) at p. 228:

"By the very terms of the rule under which that action was taken, its propriety must be judged by whether it was taken 'for good cause.' The rule was not designed to censure wrong, but to right it . . . Error implies fault. 'Good cause' for remedying it begins with that premise and concerns itself only with whether the fault should be excused or extenuated in the interests of justice. The terms 'good cause', as used in this connection, is not susceptible of precise definition, but it was obviously coined to serve a remedial purpose in a matter addressed primarily to the conscience of the court and it should therefore be interpreted with commensurate liberality, not only to prevent a manifest injustice but to avoid a threatened one, especially in cases tried without a jury where evidence on one side only is presented. *Long v. Stilwell Homes, Inc.*, Mo.App., 333 S.W.2d 103, 106. When a judgment has been set aside in conformity with that principle, the result ought not to be overturned except for most cogent reasons directly affecting the administration of justice, for if the order be only doubtfully in error, the error is a transient one 'and justice will yet be done on the merits.' *Kollmeyer v. Willis*, Mo. App., 408 S.W.2d 370, 380–1, and cases cited; *DeMaire v. Thompson*, 359 Mo. 457, 222 S.W.2d 93, 97. This is not to condone conduct intentionally designed or irresponsibly calculated to impede the work of the courts, but only to say that where a reasonable doubt exists, it should be resolved in favor of good faith."

It is also said that "[a]n appellate court is less likely to interfere when the trial court has set aside a default judgment than when it has not." *Corzine v. Stoff*, 505 S.W.2d 162 (Mo.App.1973).

It is apparent that there was some confusion among defendant's employees as to the significance of the summons when they had already forwarded the proposed petition to defendant's insurance carrier. The record does not reveal how defendant learned of the default judgment but it does reveal that defendant's counsel took prompt action to set aside the default judgment. The motion to set the judgment aside was filed on the day after the judgment was entered and the hearing on the motion was had on July 21, 1978, the third day after it was filed. The trial court was warranted in finding that defendant's conduct was not intentionally designed or irresponsibly calculated to impede the work of the court. We cannot say that the trial court abused its discretion in setting aside the judgment in this case.

### Summary Judgment

In considering the substantive issue in this case we have been favored with a memorandum opinion by the trial court. We make use of much of that opinion without quotes although we reach a contrary conclusion.

Plaintiff was seriously injured in a two car accident and was treated for those injuries at defendant's hospital. On June 6, 1972, plaintiff, a minor, filed suit through his father as next friend against the drivers of the two automobiles.

The petition filed in that action was in two counts, one seeking damages for plaintiff for substantially the same bodily injuries for which damages are claimed herein; the other, seeking damages for medical expenses and loss of services by his parents.

After pre-trial discovery, the cause was assigned for trial on December 18, 1973. The docket entry for that date reads as follows: "Parties appear, answer of plaintiff to defendant Smith's supplemental interrogatories filed; jury panel sworn on voir dire, jury sworn, instruction # 1 read to the jury, trial progressed, jury discharged, jury trial waived by plaintiffs and evidence adduced. Cause taken as submitted."

Thereafter, on December 21, 1973, the following entry was made: "Fred Marvin Arthur substituted as guardian of the estate of Donald James Arthur in place of Frederick Arthur as next friend. Certified copy from Probate Court, in and for City of St. Louis evidencing appointment of Fred Marvin Arthur as guardian of the estate of Donald James Arthur filed."

"Upon evidence previously adduced and submission thereof, finding and judgment granted and entered in favor of Fred Marvin Arthur as guardian of the estate of Donald James Arthur, and against defendants in and for the sum of Thirty Thousand ($30,000.00) Dollars on Count I. Guardian authorized and ordered to pay Henry Simpson, Esq., the sum of Ten Thousand ($10,000.00) Dollars as attorney's fees. Finding and judgment granted and entered in favor of Fred Marvin Arthur and Helen M. Arthur, his wife, as parents of Donald James Arthur, in and for the sum of Twenty-Eight Thousand ($28,000.00) Dollars on Count II for medical, surgical and hospital charges and expenses. Next friend discharged."

Thereafter, on April 2, 1974, the following entry was made: "Now comes Fred M. Arthur, guardian of the estate of Donald James Arthur, a minor, and Fred M. Arthur and Helen M. Arthur, parents of Donald J. Arthur, and acknowledge full and complete satisfaction of the judgment entered herein on Count I in the sum of Thirty Thousand ($30,000.00) Dollars and on Count II in the sum of Twenty-Eight Thousand ($28,000.00) Dollars."

Defendant in this case urged the judgment and satisfaction as a bar to the action and filed a motion for summary judgment. In opposition to the motion for summary judgment, plaintiff filed affidavits to the effect that he and his father did not intend to release anyone other than the two automobile drivers and that they did not consider the amount paid to be in full satisfaction for the injuries and damages sustained. Defendant filed and both parties relied upon the transcript of the hearing before Judge William E. Buder on December 18, 1973. The minor and both parents testified. A reading of the entire transcript, as opposed to isolating particular questions and answers out of total context, indicates an agreement by the parties to settle the then pending case for a sum recognized by all to be grossly inadequate to compensate the

plaintiffs fully for their injuries and damages but which represented merely the maximum collectible amount of the limited insurance coverage available to the insolvent named defendants. Despite the occasional acknowledgement in response to questions phrased by plaintiff's then attorney, such as the understanding by plaintiff that he "could never again make any claim against anybody for anything arising out of this accident" or by his father and next friend that "you will never again come into court to ask for more monies in any event," the totality of the testimony reflects that questions of liability and collectibility regarding the two named defendants were the paramount factors in making the decision to settle for a sum which was expressly stated to be less than full compensation for the injuries and damages sustained.[1]

The proceeding in the original action, after the jury was discharged, were had for the purpose of effecting a settlement of the minor's claim against defendants, who were parties to that action.

Because the trial court entered a summary judgment in this case the simplistic issue is whether there is a material issue of fact to be resolved. This in turn resolves into the question of whether the judgment entered in favor of plaintiff against the original tortfeasors and the satisfaction thereof, bars the present action as a matter of law.

For reversal, plaintiff places heavy reliance upon State ex rel. Normandy Orthopedics, Inc. v. Crandall, 581 S.W.2d 829 (Mo. banc 1979). In Crandall the issue was whether a release executed by plaintiff in favor of an original tortfeasor was a bar to an action for malpractice arising out of treatment of the injuries received in the accident involving the original tortfeasor. An extensive analysis of that case is warranted.

In that case plaintiff was a passenger in a car that was involved in a one-car accident. The plaintiff there sued the driver of the car alleging as injuries "fracture of the

---

1. The court that entered the judgment in that action put the matter in perspective when he asked "Do you understand this is the end of the

road insofar as these two other young minors are concerned?" to which plaintiff answered "yes, sir."

left femur ... [requiring] an open reduction ... [with] a nail inserted down the shaft of the femur" resulting in permanent lameness. The petition made no express reference to any actionable conduct with respect to medical treatment. The case was settled before trial for $9,000.00. Plaintiff executed a stipulation reciting that the case had been "fully and satisfactorily compromised and settled and is hereby dismissed with prejudice." Plaintiff also executed a release that stated that it released the defendant in that suit "and any and all persons, firms and/or corporations whomsoever, in any way arising out of any and all injuries, losses and damages now known or that may hereafter develop ..." 581 S.W.2d at 831.

The court there noted that based upon the principal that a person may have but one recovery for his injuries, a release with the language quoted above has generally been held to evidence full satisfaction of the injured party's claim even as to parties not named in the release and who furnished none of the consideration for the release. In those cases where the party who was not named in the release was a joint tortfeasor it was held that the release inured to his benefit as a matter of law. *Kestner v. Jakobe*, 412 S.W.2d 205 (Mo.App.1967). The court in *Crandall* also noted that in those cases involving successive tortfeasors, such as the case at bar, in which it was held that the release of the original tortfeasor was a release of the successive tortfeasor, the records did not reflect that the injured party did not consider the release as complete satisfaction for the injuries sustained. See *McQueen v. Humphrey*, 421 S.W.2d 1 (Mo. 1967) and *Rogers v. Piper*, 543 S.W.2d 261 (Mo.App.1976).

The court in *Crandall*, distinguished the latter cases from the case before it on the ground that plaintiff there offered evidence of the intended scope of the release; that there had been only partial satisfaction for his injuries. It held that "a release purporting to comprehend any and all claims arising from a particular incident, including claims against unspecified strangers to the agreement, does not necessarily bar subsequent suits against an unspecified third party." 581 S.W.2d at 833. The court held further that the affidavits of plaintiff raised a material factual issue and that where an alleged successive tortfeasor seeks to invoke the bar of the release the burden is upon him to prove that the injured party has received "full compensation" for his injuries. *Crandall* at p. 834.

If plaintiff in the case at bar had not been under the disability of infancy and had executed a release similar to that in *Crandall* we would readily reach the same result.

Does the fact that a judgment was entered against the original tortfeasors dictate a different result?

■ The defense in this case is collateral estoppel by judgment. This defense allows strangers to a prior suit to set up the prior suit as a bar to relitigation of issues previously adjudicated, as against parties to the prior suit. In determining whether the defense is appropriate we are to consider "(1) whether the issue decided in the prior adjudication was identical with the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; and (3) whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication .... whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit .... Fairness is the overriding consideration in determining whether or not to apply the Doctrine of Mutuality." *Oates v. Safeco Ins. Co. of America*, 583 S.W.2d 713, 719 (Mo. banc 1979).

■ In the present case the judgment that was entered is specially provided by § 507.184 RSMo 1969, for the purpose of settling litigation involving minors. The statute so far as applicable to our determination reads as follows:

"507.184 ...

1. The next friend, guardian *ad litem* or guardian and curator shall have the power and authority, subject to the approval

of the court, to waive a jury and submit all issues in such action or proposed settlement to the court for determination.
2. The next friend, guardian *ad litem* or guardian and curator shall have the power and authority to contract on behalf of the minor for a settlement of the minor's claim, action or judgment, provided that said contract and settlement shall not be effective until approved by the court. The next friend, guardian *ad litem* and guardian and curator shall also have the power and authority to execute and sign a release or satisfaction and discharge of a judgment which shall be binding upon the minor, provided the court orders the execution of such release or satisfaction and discharge of judgment."

The proceedings held before Judge Buder in the original action indicate that the defendants in that action and plaintiff through his next friend had negotiated a settlement. A fact finding body could find that the proceeding was for the purpose of obtaining court approval of that settlement;

that the court did not undertake to make a determination of the issues framed by the pleadings. Its function was to determine whether the proposed settlement was in the best interest of the minor plaintiff. One could find from a reading of the transcript in that proceeding that the settlement was based upon the limited coverage of one of the defendants and the very doubtful liability of the other defendant. Both defendants were minors and apparently judgment proof.[2] Neither the issue of the liability of Deaconess nor the full compensation of the plaintiff was determined by the trial court on the merits in the prior case. *Oates v. Safeco Ins. Co. of America, supra.*

 We are of the opinion that the principles enunciated in *State ex rel. Normandy Orthopedics, Inc. v. Crandall, supra,* are applicable in this case. The primary difference between the release in *Crandall* and the judgment here is that the judgment does not carry the broad exoneration of "any and all other persons, firms and/or

2. The basis of the settlement is illustrated by the following from the transcript of that proceeding:

"Q [The Court] Now, if you have any questions I don't want you to hesitate—you're accepting a settlement of $58,000.00, is that correct?

A [Mr. F. Arthur, next friend] Yes, sir.

Q And you understand that when you accept this settlement it will completely and forever bar you again making any claim or demand between the two defendants named? In other words, you cannot come back and reopen the case or make any further claim on either Mr. Cleary's client or Mr. Kortenhoff's client, do you understand that?

A I understand it, Judge.

Q I appreciate that your son is severely injured and probably, as you say, never will recover. I understand those circumstances but I, to be frank, as I understand the thing that compels your acceptance of this settlement is: First, the fact that there is a question as to whether both defendants would be held in the case, that only one may be held, and that is not the Defendant Smith.

A Yes.

Q Let me put it this way, that the liability; this is probably the better way to put this, is that the liability against the Defendant Smith is not as strong as it would be against the other defendant, so, instead of a judgment against two defendants, it's a possibility there would be

a judgment entered only as to one, is that a factor which enters into your consideration?

A Yes, sir.

Q Secondly, that both defendants are minors and probably have no assets or resources of their own, and if they do, it's probably a negligible amount, and the only source in which you can affect collection would be by insurance, and, as I understand, one has a $50,000.00 policy and that is the Defendant Koob?

. . . .

THE COURT: What I'm trying to establish here, these are factors taken into consideration by the defendant, (sic?) is that, the amount, if it were unlimited, and it would be uncollectible—the theory is, we might say, a bird in the hand is worth two in the bush?

THE WITNESS: That's what's going on, Judge.

THE COURT: For instance, let's say these were two large corporations, I imagine you wouldn't even consider this settlement?

THE WITNESS: I wouldn't even think about it.

THE COURT: That's what I want to know. If I'm not correct you say so.

THE WITNESS: No. It's unfortunate, that's all.

THE COURT: I'm not doing your thinking, but what you're saying here is that this will be of some assistance?

THE WITNESS: Certainly."

corporations whomsoever in any way arising from or out of all injuries, losses and damages ..." We hold that a judgment entered under § 507.184 RSMo 1969, for the purpose of effecting a settlement of a minor's cause of action does not as a matter of law bar subsequent suits against persons who were not parties to the action. Collateral estoppel by judgment like the defense of release is an affirmative defense and the defendant carries the burden of proof. *Crandall, supra.* In this case the question of full satisfaction or full compensation for damages received by plaintiff was for the jury. The fact that the guardian of the estate of the minor executed a satisfaction of judgment constitutes satisfaction of the particular judgment entered and not full satisfaction of all damages suffered by plaintiff.

There are material matters of fact to be determined. It follows that the summary judgment entered in this case must be reversed and the cause is remanded to the Circuit Court for further proceeding.

WEIER and SNYDER, JJ., concur.