Thomas O'DONNELL, Guardian of the Person and Estate of Emma O'Donnell, an Incompetent, and Thomas O'Donnell,

v.

ST. LUKE'S EPISCOPAL PRESBYTERIAN HOSPITALS, a Corporation, Appellee,

Dr. Roger Mell, M.D., John Carey, M.D. General American Life Insurance Company, Appellant.

No. 85–2010.

United States Court of Appeals, Eighth Circuit.

Submitted April 18, 1986.

Decided Sept. 2, 1986.

Laura B. Allen, St. Louis, Mo., for appellant.

Richard D. Watters, St. Louis, Mo., for appellee.

Before LAY, Chief Judge, and ROSENN * and McMILLIAN, Circuit Judges.

LAY, Chief Judge.

In a settlement agreement arising out of a malpractice claim brought by Thomas O'Donnell on behalf of Emma O'Donnell against two doctors and St. Luke's Episcopal Presbyterian Hospitals ("the Hospital"), the Hospital agreed that should it obtain a judgment on its counterclaim for $111,193.30 in medical expenses incurred by Emma O'Donnell, it would not execute that judgment against any of the O'Donnells' personal assets. The agreement, however, specifically reserved in the Hospital the right to proceed against any insurance proceeds payable as a result of the medical bills incurred by Emma O'Donnell at the Hospital.

General American Life Insurance Co. ("General American"), O'Donnell's health insurance carrier, intervened and opposed the Hospital's motion for summary judgment on the grounds that the settlement agreement, by releasing O'Donnell from liability on her debt to the hospital, also released her insurer from that liability. The district court rejected General Ameri-

can's argument and granted the Hospital's motion for summary judgment. Judgment was entered in the amount of $111,193.30; General American appeals.

The fundamental issue on appeal is whether a covenant not to execute a judgment against a party's personal assets operates as a release of that party's liability such that the party's insurer will also be relieved of liability on its insured's debt. General American argues that the settlement agreement operated as a release of O'Donnell's liability on the Hospital's counterclaim for medical expenses. It urges that since General American agreed only to indemnify O'Donnell for certain debts, the Hospital's release of O'Donnell necessarily releases General American from liability as well. General American further argues that Missouri has no direct action statute nor any other statutory provision which would grant the Hospital the power to proceed directly against General American. Without such authority, General American argues, any attempts by the Hospital to collect the plaintiff's debt from General American are unenforceable.

The Hospital argues that the settlement agreement did not constitute a release, but only specifically insulates from execution O'Donnell's personal assets. It contends that the provision at issue merely represents a covenant by the Hospital to enforce any judgment it may obtain against O'Donnell only against certain assets. Those assets are O'Donnell's contractual rights with her insurer, General American, or with any other insurer providing applicable coverage.

■ Generally, substantive contractual rights of parties are governed by the law of the state where the contract is made, performed, and where the transactions thereunder occurred. *Modine Manufacturing Co. v. Carlock*, 510 S.W.2d 462, 464 (Mo.1974). Missouri law is clear that the primary rule of construction, whether for a release or any other type of contract, is that the intent of the parties shall govern.

* The HONORABLE MAX ROSENN, Senior United States Circuit Judge for the United States Court of Appeals for the Third Circuit, sitting by designation.

*Williams v. Riley*, 243 S.W.2d 122, 124 (Mo.App.1951). Accordingly, the court must consider all of the surrounding facts and circumstances under which the parties acted. *Id.*

■ The parties focus their arguments on two Missouri cases. In *Bailey v. Aetna Casualty and Surety Co.*, 497 S.W.2d 816 (Mo.App.1973), an injured plaintiff executed a general release relieving the tortfeasors of liability for her injuries. The plaintiff then proceeded against her automobile insurance carrier for proceeds under her policy. The insurer argued that the release of the tortfeasors' liability also operated as a release of its contractual liability. The Missouri Court of Appeals disagreed, observing:

> Aetna was not a party to the litigation giving rise to the Release nor was it privy to the defendant tortfeasors. Its obligation to pay medical expenses to Jacquelyn Bailey was then in dispute and her claim in the litigation was not only against different persons but was also in tort as distinguished from the present claim on contract asserted against Aetna. It would require a degree of judicial agility, of which we are incapable, to read into this Release any intention on the part of plaintiff to release her claim for medical expenses against Aetna under its policy of insurance.

*Id.* at 820.

O'Donnell attempts to distinguish *Bailey* on the grounds that in this case, the Hospital is also a tortfeasor, whereas in *Bailey* the hospital was merely a creditor that provided the plaintiff with medical services. Since the hospital in *Bailey* was not a party to the settlement agreement, the debt for the treatment was not discharged. A close reading of the settlement agreement involved here, however, reveals that this case is virtually indistinguishable from *Bailey*. The parties in this case intended to settle only the malpractice claim; the hospital's counterclaim remained viable. The only change made in the status of the counterclaim was as against which assets any judgment thereon could be enforced.

The other Missouri case relied on by the parties is *Farmers Mutual Automobile Insurance Co. v. Drane*, 383 S.W.2d 714 (Mo. 1964). That case involved the application of Mo.Ann.Stat. § 537.065 (Supp.1986), which enables an injured party to agree not to execute any judgment obtained against certain specified assets of a tortfeasor while retaining his right to enforce it against the tortfeasor's liability carrier. The *Drane* court held that an agreement made under this statute does not constitute a release because it does not purport to terminate the tortfeasor's liability, it merely limits the enforceability of a judgment based upon that liability. *Id.* at 720. Also significant was the fact that the plaintiff's reservation of rights against the insurer clearly indicated that the parties did not intend that the settlement amount was in full satisfaction of the plaintiff's claims. *Id.* at 719. St. Luke's agrees that section 537.065 does not apply to this case, but it asserts that the *Drane* court's reasoning is sound and should be applied here as well. We agree that this reasoning is sound and is persuasive even in the absence of the application of section 537.065. The intent of the contracting parties must control.

It is clear that O'Donnell and St. Luke's had no intention of discharging O'Donnell's medical bills as part of the settlement of the malpractice claim. O'Donnell, however, wanted to ensure that those bills be satisfied only out of the available insurance proceeds, not out of her personal assets. Therefore, she required St. Luke's to agree to enforce the judgment on the counterclaim only against those existing contractual rights.

Judgment affirmed.